(100 South. 553)

## ALABAMA GREAT SOUTHERN R. CO. v. CUMMINGS.  (2 Div. 822.)

(Supreme Court of Alabama.   Dec. 13, 1923.
Rehearing Denied May 29, 1924.)

**1. Constitutional law 81—Police power as to nuisances limited to prohibition or regulation of acts interfering with another's rights.**

The police power of the Legislature, in reference to prohibition of nuisances, is limited to prohibition or regulation of those acts which injure ·or otherwise interfere with rights of others.

**2. Constitutional law 277(1)—Eminent domain 45—Right to use property not arbitrarily taken.**

Right to use property is as much under protection of law as property itself is, and one interest can no more than the other be taken without trial or compensation.

**3. Negligence 32(1)—Licensee assumes risk.**

Bare licensee goes on another's land or property at his own risk, and must take same as he finds it.

**4. Constitutional law 277(1)—Negligence 31—Violation of statute requiring fencing of abandoned wells held not negligence as to animal killed.**

Failure by railroad company to comply with Acts 1919, p. 195, requiring landowners to fill up or inclose abandoned or unused wells to prevent injury to persons or live stock, and imposing a penalty for violation of requirement, held not to render company liable for death of cow which fell into well on its right of way, as the company in failing to inclose such well on its property was in the enjoyment of property rights of which it could not be summarily deprived by a legislative act denouncing such wells as a public nuisance.

Gardner, Thomas, and Bouldin, JJ., dissenting.

Appeal from Circuit Court, Hale County; S. F. Hobbs, Judge.

Action for damages by W. O. Cummings against the Alabama Great Southern Railroad Company from the falling of his cow into a well on the right of way of defendant. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Reversed and remanded.

Count 2 of the complaint adopts this portion of count 1:

"The plaintiff claims of the defendant the sum of $150 as damages, for that the defendant is now, and has been continuously for the last past ten years, a common carrier of passengers and freight, owning during all of said time and operating in and through Hale county, Ala., a railroad; that during the months of March and April of the year of 1921, the plaintiff avers, the defendant owned and operated said railroad in and through said county; and plaintiff further avers that during said months of the present year, as well as many years next prior thereto, the defendant's said railroad ran by and through Stewarts, Hale county, Ala., and that the defendant maintained during all of said time a station at Stewarts called Stewarts; that near said station there was, during the months of March and April, 1921, and had been for, to wit, three years next prior thereto, an unused or abandoned well on the premises of the defendant; that said well was wholly uninclosed and had remained without inclosure for, to wit, three years next prior to the months of April and March, 1921, and was without inclosure during said months; that the presence of said well during said months of March and April, 1921, and particularly at the time hereinafter it is averred that plaintiff's cow fell into said well, was obscured by a growth of vines and grasses, or both; that along the right of way of the defendant in the vicinity of said well, and on the premises of the defendant which was a part of said vicinity, grasses were beginning to grow and were an inviting spot for cattle, which cattle in that vicinity and neighborhood were at that period of the year for several months prior thereto allowed to run at large in the vicinity of the place where said well was located; that during the said months of March or April, 1921, the exact date is unknown to the plaintiff, a cow of the plaintiff, which was at the time either grazing or walking upon and over the premises aforesaid of defendant, fell into the above-mentioned well, unused and uninclosed, at or near the defendant's said station called Stewarts, in Hale county, Ala.; and plaintiff avers that his said cow was either killed by falling into said well, which was the depth of, to wit, 20 feet, and in diameter of, to wit, 3 feet, or it died after falling into said well, being unable to extricate itself therefrom, and its presence in said well was not discovered until said cow was dead."

And adds the following:

"The plaintiff avers that by an act of the Legislature of Alabama entitled 'An act to provide for the fencing or closing in of unused wells, cisterns, or mining shafts in this state,' approved August 9, 1919, all persons on whose premises or lands are located abandoned or unused wells, cisterns, or mining shafts are required, within 90 days after the approval of said act, to cover or fill said wells, cisterns, and mining shafts, or, in the event they wish to retain for possible future use, they are required to place and maintain a substantial inclosure around such wells, cisterns, or mining shafts, in order that no person or live stock may be injured thereby; and plaintiff further avers that by section 2 of said act it is provided that any person violating the provisions of this act shall on conviction be fined not less than $10, not more than $50; and the plaintiff further avers that the well above mentioned, and into which plaintiff's said cow fell and lost its life, was on the premises or lands of the defendant, and said well had remained an abandoned and unused well for a period of, to wit, three years next before plaintiff's said cow fell into the same, and during all of said time there was around said well no inclosure; and the plaintiff further avers that the death and loss of his said cow was proximately caused by the negligent or unlawful failure or omission on the part of the defendant to maintain a substantial inclosure around said well, or fill the same up, as commanded so to do by the averred positive law of this state; all to the damage of the plaintiff as aforesaid. Which sum of money with the interest thereon, is still due and unpaid; wherefore this suit."

Count C. This count adopts all of count A, as follows:

"Plaintiff claims of the defendant the said sum of $150 as damages [here plaintiff adopts as a part of this count all of count 2 down to the words 'the plaintiff avers that by an act of the Legislature'], and in addition thereto plaintiff avers that the said well was dug by the defendant, its agents or servants in the scope of their employment, and plaintiff avers that the proximate cause of the death and loss of his cow was the negligence of the defendant, its agents or servants, in permitting or suffering said well to remain uninclosed while the top or opening thereto was obscured by vines, weeds, or grasses, in a community where cattle were at that period of the year allowed to run at large, and where they did run at large during that period of the year, and upon a spot made inviting to cattle by reason of the grasses then beginning to grow and growing."

And adds the following averment:

"That cattle and stock in the neighborhood and immediate vicinity of said well were accustomed to run at large and did run at large in large numbers during the months of March and April, 1921, and during said months of March and April for many years next preceding the year 1921, and that the defendant knew of the same."

Smith, Wilkinson & Smith and R. B. Evins, all of Birmingham, for appellant.

The owner of lands is not required to make them safe for enjoyment by his neighbor.

Knight v. Abert, 6 Pa. 472, 47 Am. Dec. 478. Acts 1919, p. 195, does not give a right of action to an individual for a failure to comply with its terms. Taylor v. Lake Shore, 45 Mich. 74, 7 N. W. 728, 40 Am. Rep. 457; Flynn v. Canton Co., 40 Md. 317, 17 Am. Rep. 603; City of Hartford v. Talcott, 48 Conn. 525, 40 Am. Rep. 189; Watts v. Montg. Tr. Co., 175 Ala. 102, 57 South. 471.

Thomas E. Knight, of Greensboro, for appellee.

Plaintiff's cattle were not trespassing upon defendant's property, but were there by right; and plaintiff was entitled to protection in exercising his right to allow them to run at large. A. G. S. v. Jones, 71 Ala. 487. The complaint states a good cause of action. Union Pacific v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434; Brinilson v. C. & N. W., 144 Wis. 614, 129 N. W. 664, 32 L. R. A. (N. S.) 359; Bjork v. City of Tacoma, 76 Wash. 225, 135 Pac. 1005, 48 L. R. A. (N. S.) 331; Curry v. So. Ry., 148 Ala. 57, 42 South. 447; Hurd v. Lacy, 93 Ala. 427, 9 South. 378, 30 Am. St. Rep. 61.

SAYRE, J. Plaintiff's (appellee's) cow fell into an abandoned or unused well on defendant's right of way and was thereby killed. The main question litigated on this appeal is whether defendant is liable to plaintiff by reason of the facts and the act of August 9, 1919 (Acts 1919, p. 195), providing that—

"Section 1. That all persons on whose premises or lands are located abandoned or unused wells, cisterns, or mining shafts be and they are hereby required, within ninety days after the approval of this act, to cover or fill them up, or in the event they wish to retain them for possible future use, they are required to place and maintain a substantial inclosure around such wells, cisterns or mining shafts, in order that no person or live stock may be injured thereby.

"Sec. 2. That any person violating the provisions of this act, shall on conviction, be fined not less than ten dollars, nor more than fifty dollars."

The case went to the jury on counts 2 and C, to which, as set out by the reporter, we refer for the facts. That defendant was not liable at the common law appears to have been ruled in the trial court, and we suppose there can be no reason to doubt the propriety of that ruling. However, we are referred to Union Pacific Railway Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, sometimes denominated the "Slack-Pit Case" and usually classed with the original "Turntable Case." Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745. As we said in Athey v. T. C. I. Co., 191 Ala. 652, 68 South. 154, some courts repudiate the doctrine of the "Turntable Cases"; some of those that acknowledge their authority evince a marked disinclination to extend it to new and different circumstances. In the recent case of United Zinc Co. v. Britt, 258 U. S. 268, 42 Sup. Ct. 299, 66 L. Ed. 615, the Supreme Court of the United States has said that "the doctrine needs very careful statement not to make an unjust and impracticable requirement," and the court held that a landowner owes no general duty to keep his land safe even for children of tender years, or even from some hidden danger, if he has not directly or by implication invited them there. In its original application, and in some analogous cases, it has been accepted as sound law by this court. A. G. S. R. R. Co. v. Crocker, 131 Ala. 584, 31 South. 561; Clover Creamery Co. v. Diehl, 183 Ala. 429, 63 South. 196. But the doctrine was invented to save the case of children of tender years (Central of Georgia v. Robins, 209 Ala. 6, 95 South. 370), drawn into injury by attractive machinery and the like, and evidently should have no influence in the decision of this cause.

[1] Plaintiff's case, as stated in the counts under consideration, rests upon the act quoted above, and the act must rest, if upon any substantial basis, upon the authority of the Legislature to exercise the police power for the suppression of nuisances.

"But the police power of the Legislature, in reference to the prohibition of nuisances, is limited to the prohibition or regulation of those acts which injure or otherwise interfere with the rights of others," and what is a nuisance is a judicial question. Tiedeman's Limitations of Police Power, § 122a.

The same authority says (section 122) that—

"It is not difficult to find the rule which determines the limitations upon the lawful ways or manner of using lands. It is the rule which furnishes the solution of every problem in the law of police power, and which is comprehended in the legal maxim, Sic utere tuo ut alienum non lædas."

[2] And this (section 122a):

"The next thing to depriving a man of his property is to circumscribe him in its use, and the right to use property is as much under the protection of the law as the property itself, in any other respects, is, and the one interest can no more than the other be taken out of the hands of the ordinary tribunals. If a man's property cannot be taken away from him except upon trial by jury, or by the exercise of the right of eminent domain upon compensation made, neither can he, in any other mode, be limited in the use of it."

The foregoing is a statement of familiar general principles. Something further needs be said in respect of their application to the facts presented by the case in hand.

As we have said, the ground of liability in this case, if any, is that of a public nuisance causing special injury. Professor Jaggard adopts the following definition of a nuisance

as being substantially that of Judge Cooley and as little objectionable as any:

"Nuisance is a distinct civil wrong, consisting of anything wrongfully done or permitted which interferes with or annoys another in the enjoyment of his legal rights." 2 Jaggard on Torts, p. 744.

Our cases have defined nuisance to the same effect, substantially. Cases cited to 10 Michie's Dig. p. 676, § 31. Assuming, for the purposes of this case, defendant's interest in its right of way to be the substantial equivalent of an ownership in fee—the act makes no discrimination between the proprietors of railroad rights of way and other landowners —and speaking therefore to the case of landowners in general, it can hardly be maintained that the owner who suffers an abandoned or unused well, cistern, or mining shaft to remain without inclosure upon his land thereby interferes with or annoys another in the enjoyment of his legal rights, unless, in the case of cattle running at large, the owner, by reason of the doctrine of A. G. S. R. R. Co. v. Jones, 71 Ala. 487, is entitled to exact of owners upon whose land they may stray the duty to take precaution for the safety of such animals.

In special conditions the right of landowners to make and maintain excavations upon their own land is limited. The theory of such limitation and the circumstances in which it becomes operative are stated by the Supreme Court of the United States in Hayes v. Mich. Cent. R. R. Co., 111 U. S. 235–236, 4 Sup. Ct. 369, 372 (28 L. Ed. 410), and we can do no better than to quote:

"In Barnes v. Ward, 9 C. B. 392, it was decided, after much consideration, that the proprietor and occupier of land making an excavation on his own land, but adjoining a public highway, rendering the way unsafe to those who used it with ordinary care, was guilty of a public nuisance, even though the danger consisted in the risk of accidentally deviating from the road, and liable to an action for damages to one injured by reason thereof; for the danger thus created may reasonably deter prudent persons from using the way, and thus the full enjoyment of it by the public is, in effect, as much impeded as in the case of an ordinary nuisance to a highway."

The court noted that this doctrine has been adopted in England and generally in this country. And the court, quoting from Alger v. City of Lowell, 3 Allen (Mass.) 402, stated the true test to be—

"not whether the dangerous place is outside of the way, or whether some small slip of ground not included in the way must be traversed in reaching the danger, but whether there is such a risk of a traveler, using ordinary care, in passing along the street, being thrown or falling into the dangerous place, that a railing is requisite to make the way itself safe and convenient."

This, by process of exclusion, defines the circumstances in which an excavation on private premises may become a nuisance. But the language of the act in question denounces all abandoned or unused wells, cisterns, and mining shafts, without regard for their location with reference to highways, or other public places, or the premises of adjoining proprietors.

[3] A bare licensee, according to the American cases, goes on another's land or property at his own risk, and must take the same as he finds it. 2 Jaggard. 891, where many of the American cases are cited. To quote again:

"A mere volunteer or licensee, if he is on the premises by the owner's passive acquiescence, is entitled to the exercise of no duty on the part of the owner as to the safety of the premises. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owners or persons in possession to provide against danger of accident."

Our cases are in accord. This should suffice to dispose of any question as to the duty of landowners to intelligent beings who come upon their property without invitation, express or implied. And even as to children so little advanced as to be unable to recognize patent dangers this court has said, following the authorities generally, that—

"Their inefficiency cannot be allowed to shift the care of them from their parents to strangers, or impose upon the owners of property a duty and liability where otherwise none would exist." Athey's Case, supra.

[4] The effect of the complaint is to charge defendant with negligence, and the substance of the negligence alleged is the failure to comply with the terms of the act. But, if defendant, in failing to inclose the abandoned and unused well upon its property, not so near its boundaries as to constitute a source of danger to persons or property on a highway or attingent property, was in the enjoyment of property rights of which it could not be summarily deprived—and on reason and authority we conceive that to be the case— then the charge of negligence falls to the ground.

Plaintiff relies in the main upon A. G. S. R. R. Co. v. Jones, supra, where it was said:

"The owner [of cattle] cannot be regarded as a trespasser, or as contributing to their injury, if he suffers them to go at large, and they wander upon an uninclosed railroad. In turning them upon, or suffering them to go upon lands not inclosed, he is in the exercise of a lawful right; and to demand of the company operating trains upon a track not inclosed to prevent them from wandering upon it, ordinary care and diligence to avoid injuries to them, is also his lawful right. The right is the same in character and degree, as his right to exact from any other landed proprietor, whose

premises are not inclosed, the same duty, if the animals are found upon such premises."

But it is clear that the court in that case was considering merely the measure of duty due from railroad companies to the owners of cattle in the operation of trains, and that the court, when speaking of the right of the owner of cattle wandering upon an uninclosed railroad track as being the same as his right against any other proprietor of uninclosed land, intended merely to interpret the statutes (section 5473 of the Code of 1907 et seq.), in such cases made and provided, as affecting the duty owed by railroad companies to cattle running at large in the matter of operating their trains, that is, the duty not actively to do them hurt, and by no means intended to announce a rule, statutory or common-law, that would require landed proprietors to put themselves to trouble and expense to provide safe pasturage for their neighbors' cattle.

We are therefore at the conclusion that, as for the circumstances alleged in his complaint, plaintiff has failed to state a cause of action.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and MILLER, JJ., concur.

GARDNER, THOMAS, and BOULDIN, JJ., dissent.

### On Rehearing.

SAYRE, J. On rehearing appellee refers to Hurd v. Lacy, 93 Ala. 427, 9 South. 378, 30 Am. St. Rep. 61, as sustaining his contention in respect to his amended complaint. That case, if controlling to the effect assigned to it by appellee, would sustain appellee's original complaint, demurrers to which were sustained in the trial court. The opinion in that case contains some loose language which may seem to sustain appellee's contention in the case now in judgment; but such language was dictum; the complaint here is based upon the statute, and the statute was enacted long after Hurd v. Lacy was decided. When the facts of that case are considered, it will appear that the judgment there is not opposed by anything we have had to say in the present case. That complaint proceeded on the notion that defendant was liable in damages for that he negligently constructed a barbed wire fence along the line between his property and the highway where, as a court held, plaintiff's mule had the right to be, and, of course, defendant was required to consider that right when constructing his fence. Here the abandoned well was not contiguous to any property line nor any way or highway along which appellant's cow had the right to move, and, in our judgment, the con-

siderations stated in the original opinion should apply, with result that appellant was under no duty to fence its well.

Application overruled.