(112 So. 352)

### COX v. ALABAMA WATER CO. (6 Div. 818.)

Supreme Court of Alabama. April 7, 1927.

I. Negligence ⊙➾39—Landowner held not liable for drowning of child in unfenced pool, which he knew was frequented by school children.

No recovery could be had against landowner for death of 8 year old child by drowning in pool, which landowner maintained on his premises, though defendant knew neighborhood of pool was frequented by school children and contained edge of concrete claimed to be attractive to children, and though pool was unfenced, there being no implied invitation making landowner liable on theory of attractive nuisance.

2. Negligence ⊙➾33(1)—Landowner is not liable for injury resulting from condition of premises, in absence of implied invitation.

To render landowner responsible for mere condition of his property, in absence of affirmative act calculated to inflict injury, invitation to person injured must be implied from conduct amounting to more than sufferance or passive acquiescence in repeated trespasses.

3. Negligence ⊙➾39—Landowner maintaining pool was not rendered liable for drowning of child by permitting accumulations of slime, increasing danger to child falling in.

Landowner, who maintained pool on his premises frequented by school children, was not liable for death of 8 year old child by drowning by fact that slime had accumulated on sloping sides of reservoir, creating danger of drowning in case trespassing child should fall in.

Appeal from Circuit Court, Walker County; Ernest Lacy, Judge.

Action by J. R. Cox, as administrator of the estate of Willie Lee Cox, deceased, against the Alabama Water Company. Plaintiff takes a nonsuit and appeals from adverse rulings on pleading. Affirmed.

The following are counts 1, 4, A, D, and F of the complaint:

"(1) The plaintiff claims of the defendant the sum of $30,000 as damages, for that heretofore on, to wit, May 3, 1926, and for a long period of time prior thereto, the said defendant maintained upon its premises, or premises under its control, an artificial pool, cistern, or reservoir of water, which said artificial pool, cistern, or

reservoir was at a place on top of a hill over-looking the town of Dora, Ala., in Walker county, Ala., and overlooking the schoolhouse located in said town, and at a place where children of a tender age resorted to play, and where children attending school and going home from same would go over and along by said artificial pool, cistern, or reservoir, along a path made for the purpose of said travel; and said pool, cistern, or reservoir was constructed by digging or removing the dirt from a large space of ground, to wit, 130 feet long by, to wit, 40 feet wide, and, to wit, 25 feet deep, and the ends of the same were rounding and not square, so that said pit in said ground presented an egg-like appearance, and the plaintiff alleges that the bottoms, ends, and sides of said pit were concreted with smooth concrete to the level of the surface of the earth, and around the said pit the ground was level. The plaintiff alleges that the agents or servants of the defendant, acting within the line of their duty and scope of their authority, pumped or caused to be pumped in said concrete pit water each day and kept said water up to, to wit, 5 feet of the top thereof, and that by said pumping said water therein the said pool, cistern, or reservoir was kept up and filled up to said point. Plaintiff alleges that the sides and ends of said pit forming said pool, cistern, or reservoir were not perpendicular, but were constructed at an angle of, to wit, 45 degrees, so that the top and ends of same above said water was smooth cement, and made an inviting place for children of tender years to walk, run, and play. Plaintiff alleges that the said agents or servants of the said defendant, acting within the line of their duty and scope of their authority, so maintained said water in said pit forming said pool, cistern, or reservoir up to within, to wit, 5 feet of the top, and owing to some formation of the water, or owing to vegetable decay, or from some chemical reaction, or from staleness of the water, or some other natural chemical cause, the said pool has formed on the sides and ends of said pool a slime, moss, or silt all the way from just beneath the water's edge to the bottom of said pool, cistern, or reservoir, a depth of, to wit, 20 feet, and that the said slime, moss, or silt was, to wit, 2 inches thick, and was of such slick formation that the foot of man or child could not stand on the same in said slanting position, and so that if a child stepped into the edge of said water and on to said slime, moss, or silt, it was so slick that its feet would slip from under it and it would shoot down the incline to the bottom of said pool, cistern, or reservoir some 20 feet deep, and that said slime, moss, or silt was so slick that it could not get out, and that a man could not get out, by reason of the fact that when he would get to the edge, owing to the steepness of the sides and the formations of slime, moss, or silt on the sides, when his feet or knees were let against them and weight placed on them, his knees or feet would fly from under him and down to the bottom he would go again, so that within said pool, cistern, or reservoir, hidden below the surface thereof, was a concealed danger unknown to the children that resorted near there to play and that went by there to school, but which danger was known to the agents and servants of the defendant and had been known to them for a long period of time, to wit, one year, and was so well known to them that when one of them had occasion to go down therein or drain said pool, cistern, or reservoir, the said agents or servants of the defendant charged with the duty of maintaining said pool had prepared for themselves a long plank with cleats nailed across the same, so that he could lay said plank against the sides or ends of said pool, cistern, or reservoir, and on said slime, moss, or silt, and walk down said cleats on said plank or walk up said plank.

"Plaintiff avers that said pool, cistern, or reservoir was artificially made, and was attractive to children by reason of the water, and by reason of the level dirt walkway around it and by reason of the cement runway some 5 feet wide left at the top of the water line; that said pool, cistern, or reservoir was dangerous to children, by reason of the walls being cemented slick, and by reason of letting the water stand so long that said slime, moss, or silt had settled upon the sides and ends in such quantities that when once a child got in he could not get out, by reason of said slickness being so that he could not stand or pull himself out of the water by reason of said slickness proximately caused by said slime, moss, or silt. Plaintiff avers that said pool, cistern, or reservoir had been maintained at said place in said condition by the defendant for a long period of time, to wit, several years; that it knew, or the agents and servants of the said defendant charged with the duty of maintaining said pool knew, that children were in the habit of resorting near this pool, cistern, or reservoir to play, and knew that children were in the habit of going the path to and from school that led by said pool, cistern, or reservoir. Plaintiff alleges that said defendant knew of the dangerous character of said pool, cistern, or reservoir; that it was maintained open and uncovered and unscreened. Plaintiff alleges that the defendant, knowing the dangerous character of said pool, cistern, or reservoir, and knowing that it was attractive to children, and knowing that said slime, moss, or silt on the sides and ends would prevent one from getting out once it got in, and knowing that it was uncovered, and knowing that children were in the habit of resorting near there to play and passed there going to and from school, yet, nevertheless, it left said pool, cistern, or reservoir without a guard, and without a fence that would turn back a child, and that it permitted the fence to fall down and become unloosened, and not in condition or position to turn back a child, which condition of said fence it permitted to remain down for a long period of time, to wit, one year.

"Plaintiff avers that on, to wit, May 3, 1926, his intestate, Willie Lee Cox, who was 8 years old, while on his way to school going along said path that passed along and by said artificial, attractive, and dangerous uncovered pool, cistern, or reservoir, and there being no fence, except a part of one that had fallen down, to turn him, wandered or was attracted to said pool, cistern, or reservoir, and to said cement run-around, and that he either fell in or stepped in, and that, owing to said hidden danger of said slime, moss, or silt, he could not get out, and he was drowned therein.

"Plaintiff avers that the defendant owed to his intestate a duty to keep said pool, cistern, or reservoir guarded or fenced so that children of the age of his intestate could not go within the danger zone therein, and he alleges that the

death of his intestate was proximately caused by reason of, and as a proximate consequence of the agents or servants of the defendant, acting within the line of their duty and scope of their authority, negligently maintaining said pool, cistern, or reservoir in its said dangerous condition, without a guard or without a proper fence to turn away children attracted thereto."

(4) For count 4, the plaintiff adopts all the words and figures of count 1, down to and including the words "and he was drowned therein," where the same first occur together therein, and adds thereto the following:

"Plaintiff alleges that the agents or servants of the defendant, acting within the line of their duty and scope of their authority, knew that children resorted too near that pool; knew that they went along the path by the same; knew that it was uncovered; knew that the fence was down; knew that the pool and the cement run-a-round was attractive to children; knew that the slime, moss, or silt had collected on the sides and ends to such a thickness that if a child fell or stepped therein he would be shot to the bottom; that they knew he could not get out by reason of said slime, moss, or silt; that they knew that a child was liable to be attracted to said place; they knew the danger was hidden; they knew it was a death trap setting in an attractive place to children; and, knowing these facts, wantonly left said pool, cistern, or reservoir unguarded and without a fence that would turn children, that is, with the fence that was there torn down; and plaintiff alleges that the death of his intestate was proximately caused by reason and as a proximate consequence of said wanton negligence.

"A. The plaintiff claims of the defendant the sum of $30,000 as damages for that heretofore, to wit, on May 3, 1926, and for a long period of time prior thereto, the defendant maintained on its premises or premises under its control an artificial pool, cistern, or reservoir of water, which said cistern, pool, or reservoir was made in a platter like shape some 100 feet long by 40 feet wide and, to wit, 25 feet deep, the ends being rounding, and which was made by excavating from the surface of the earth dirt, and by building the side, end, and bottom walls out of cement, making the sides and ends thereof slant downward at an angle of, to wit, 45 degrees, and making the cement surface smooth; plaintiff avers that water was kept or maintained in said excavation which composed said pool, cistern, or reservoir up to within about, to wit, 7 feet of the top of the cement, and which said cement above said water made an attractive place for children to play and run around upon; plaintiff avers that beneath the surface of said water there had grown or collected silt, or moss or slime, to wit, 2 inches deep, which was hidden beneath the surface of said water, and being on the sides and ends of said cistern was so slick that a child or person getting on same could not stand up, but would slip down into said reservoir, and owing to its slickness could not get out and was a danger to children playing therein or around said pool, and which said danger was a hidden danger. Plaintiff avers that children in great numbers and with great frequency played around said pool upon the premises of the defendant or premises under its control and upon which said cistern or pool was located, and that children

with frequency and in numbers played on the said cement run-a-round above said water and had been so playing for a long time, facts which were known to the agents or servants of the defendant charged with maintaining said pool. Plaintiff avers that children in numbers passed along by said pool, cistern, or reservoir going to and returning from school, and passed within, to wit, 10 feet of the edge of the cement run-a-round of said pool, which fact was known to the agents or servants of the defendant charged with the duty of maintaining said pool; plaintiff alleges that children in numbers resorted to grounds immediately surrounding said pool, cistern, or reservoir to picnic and play, and had been doing so for a long period of time, to wit, 4 years, and that when they so picnicked they played on the grounds immediately around the edge of said cement, and used said cement run-a-round above said water; facts known to the agents and servants of the defendant charged with the maintenance of said pool, cistern, or reservoir. Plaintiff avers that said pool, with the artificial slick cement sides at an angle of, to wit, 45 degrees, covered with moss, silt, or débris to the depth of, to wit, 2 inches, which cover was hidden beneath the surface of the water, was a dangerous place for children, and that it constituted a trap or pitfall maintained by defendant or its agents and servants acting for the defendant. Plaintiff avers that the agents and servants of the defendant charged with maintaining said pool knew of the danger of said pool, and knew of the hidden moss, silt, or débris, and knew that if a child playing around said cement run-a-round should slip or fall and get upon the said slick moss, silt, or slime that it could not get out. Plaintiff alleges that on, to wit, May 3, 1926, his intestate, then a child of, to wit, 8 years of age, went upon the premises where said pool, was located, and went upon the run-a-round above said water's edge, and fell in or stepped in said water and was drowned.

"Plaintiff alleges that the grounds around said pool immediately surrounding the cement edge was made level, and that the said ground and the cement run-a-round were attractive to the childish mind.

"Plaintiff avers that the defendant owed the duty to keep said pool under a fence reasonably suitable to turn away or turn back children; that is to say, to keep said pool, cistern, or reservoir, known to be dangerous to children, reasonably fenced, and he alleges that the death of his intestate was proximately caused by reason of and as a proximate consequence of the agents or servants of the defendant, acting within the line of their duty and scope of their authority, failing to keep a fence around said pool, or in allowing the fence to fall down and remain down for a long period of time, so that it was no barrier against children who resorted there to play."

D. Plaintiff, for count D, adopts all the words and figures of count 1 and adds thereto the following averment:

"Plaintiff avers that the children in great numbers, with great frequency, and for a long period of time had been resorting to said pool, picnicking there, playing there, using said cement run-a-round, using the grounding inside of said fence immediately around said pool, and passing along to and from school by said pool

within, to wit, 10 feet thereof, and over the premises same was located upon, all of which facts were known to the agent and servants of the defendant and had been known to them for a long period of time.

"F. Plaintiff, who sues as the administrator of the estate of Willie Lee Cox, deceased, claims of the defendant $30,000 as damages, for that heretofore, on, to wit, May 3, 1926, defendant was maintaining and had for several years prior thereto maintained, on its premises or on premises under its control, a large cement pool or reservoir of water, in or near the town of Dora, Walker county, Ala.; that said pool or reservoir was built and maintained in an oval shape, the edges and sides of which sloped at an angle of, to wit, 45 degrees, so that the water therein became gradually deeper in going from the sides thereof toward the center, until it reached a depth of, to wit, 20 feet; that said pool or reservoir was maintained so that the upper portion of the cement sides thereof could be used as a runway or walkway, and was so used by children frequently and in large numbers, and was attractive to children and an attractive place for them to resort and play, all of which conditions were known to the defendant's agents, servants, or employees in charge of maintaining said pool or reservoir.

"Plaintiff further alleges that under said water and on and along the cement sides of said pool or reservoir silt, mud, moss, or slime had accumulated, so that the said sides were very slick; that if a child should get into said water in said pool or reservoir, the sides thereof below the water level were so slick, on account of said silt, mud, moss, or slime, that said child would be unable to get out of said pool or reservoir, and would suddenly slip or slide downward into said pool or reservoir where said water was deep; that defendant's said agents, servants, or employees, in charge of maintaining said pool or reservoir, knew of this condition, knew that children resorted to and placed at said pool or reservoir, knew that children placed on said walkway or runway, and knew that if a child fell into or got into said pool or reservoir it could not get out, on account of the slickness of said silt, mud, moss, or slime on the sides thereof; and plaintiff says further that said dangerous condition of said pool or reservoir could not have been seen or known by those playing on said cement walkway or runway and near said water's edge, and that said agents, servants, or employees of defendant, in charge of maintaining said pool or reservoir, knew of this condition.

"Plaintiff alleges that on, to wit, said May 3, 1926, his intestate, a minor, to wit, 8 years of age, got in or fell into said pool or reservoir and was drowned, and that his death was proximately caused by reason and as a proximate consequence of the negligence of defendant's agents, servants, or employees, in charge of maintaining said pool or reservoir, while acting within the line of their duty and scope of their authority as such."

Curtis, Pennington & Pou, of Jasper, for appellant.

Counts 1 and 4 state a good cause of action and were not subject to demurrer. Code 1923, § 5194; Gandy v. Copeland, 204 Ala. 366,

86 So. 3; Thompson v. Alexander City Cot. Mills, 190 Ala. 184, 67 So. 407, Ann. Cas. 1917A, 721; Starling v. Selma Cot. Mills, 168 N. C. 229, 84 S. E. 388, L. R. A. 1915D, 850; Sheffield v. Morton, 161 Ala. 153, 49 So. 772; Auxford Brown Ore Co. v. Hudson, 16 Ala. App. 245, 77 So. 243. An owner of premises is liable to those lawfully on his premises for injury by spring guns, pitfalls intentionally or negligently suffered to exist without warning. Scheuermann v. Scharfenberg, 163 Ala. 337, 50 So. 335, 24 L. R. A. (N. S.) 369, 136 Am. St. Rep. 74, 19 Ann. Cas. 937; N., C. & St. L. v. Blackwell, 201 Ala. 659, 79 So. 129; A. G. S. v. Crocker, 131 Ala. 584, 31 So. 561; Athey v. T. C. I. Co., 191 Ala. 646, 68 So. 154; Clover Creamery v. Diehl, 183 Ala. 429, 63 So. 196; A. S. & W. Co. v. Clements, 146 Ala. 259, 40 So. 971; O'Brien v. Tatum, 84 Ala. 186, 4 So. 158. Defendant, with full knowledge of the circumstances surrounding and the condition of the pool, and acquiescing in the use of its property by children, was liable. Pekin v. McMahon, 154 Ill. 141, 39 N. E. 484, 27 L. R. A. 206, 45 Am. St. Rep. 114; Price v. Atchison Water Co., 58 Kan. 551, 50 P. 450, 62 Am. St. Rep. 625; Kansas City v. Siese, 71 Kan. 283, 80 P. 626; Franks v. Southern C. O. Co., 78 S. C. 10, 58 S. E. 960, 12 L. R. A. (N. S.) 468; Donk Bros. v. Leavitt, 109 Ill. App. 385. Defendant owed the duty of obviating injury to children playing about the pool. C., B. & Q. v. Krayenbuhl, 65 Neb. 889, 91 N. W. 880, 59 L. R. A. 920; Cœur d'Alene L. Co. v. Thompson (C. C. A.) 215 F. 8, L. R. A. 1915A, 731.

Eyster & Eyster, of Albany, for appellee.

The law does not place the burden on any one to make injury impossible to the abnormally mischievous, disobedient boy, nor does it impose on the owner the duty to keep premises safe as to mere trespassers. Sloss Co. v. Tilson, 141 Ala. 161, 37 So. 427; Chambers v. Milner Coal Co., 143 Ala. 261, 39 So. 170. The owner is not an insurer of the premises, even to those invited thereon. U. S. C. I. P. & F. Co. v. Fuller, 212 Ala. 179, 102 So. 25. Where one is invited to go upon premises along a certain path, that does not license such person to depart from that path and render the owner liable for injury. A. G. S. v. Cummings, 211 Ala. 384, 100 So. 553, 33 A. L. R. 439; Pierce v. Whitcomb, 48 Vt. 127, 21 Am. Rep. 122; Abbott v. Ala. Power Co., 214 Ala. 281, 107 So. 811. There is no liability in cases set up by this complaint. Eades v. Amer. C. I. P. Co., 208 Ala. 556, 94 So. 593; Wheeling v. Harvey, 77 Ohio St. 235, 83 N. E. 66, 19 L. R. A. (N. S.) 1137, 122 Am. St. Rep. 503, 11 Ann. Cas. 981; U. S. Zinc & C. Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28; Thompson v. Alexander City Cot. Mills, 190 Ala. 184, 67 So. 407, Ann. Cas. 1917A, 721; Athey v. T. C. I.

Co., 191 Ala. 646, 68 So. 154; Gandy v. Copeland, 204 Ala. 366, 86 So. 3.

SAYRE, J. The report of the case reproduces counts 1, 4, A, D, and F of the complaint, these counts and the demurrers thereto sufficiently disclosing the questions raised for decision on this appeal. In the trial court a demurrer to each count of the complaint was sustained. Plaintiff thereupon suffered a nonsuit and takes this appeal, in agreement with the provision of section 6431 of the Code.

[1] The effort on the part of plaintiff is to bring his case within some permissible application of the doctrine of the so-called "turntable" cases. Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745; Union Pacific v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434; Alabama G. S. R. Co. v. Crocker, 131 Ala. 584, 31 So. 561; Clover Co. v. Diehl, 183 Ala. 429, 63 So. 196. Liability in cases of this general character has been under consideration in a multitude of cases. We shall not undertake a discussion of them. We observe, however, that the difference between negligence and intentional wrong must be kept in view. In that connection we cannot do better than to quote from the able opinion of Carpenter, C. J., in Buch v. Amory Mfg. Co., 69 N. H. 257, 44 A. 809, 76 Am. St. Rep. 163, a case in which a boy, 8 years of age, was injured by coming into contact with machinery:

"Actionable negligence is the neglect of a legal duty. The defendants are not liable unless they owe to the plaintiff a legal duty which they neglected to perform. With purely moral obligations the law does not deal. For example, the priest and Levite who passed by on the other side were not, it is supposed, liable at law for the continued suffering of the man who fell among thieves, which they might and morally ought to have prevented or relieved. * * * 'In dealing with cases which involve injuries to children, courts, *· * * have sometimes strangely confounded legal obligation with sentiments that are independent of law.' Indianapolis v. Emmelman, 108 Ind. 530 [9 N. E. 155, 58 Am. Rep. 65]. 'It is important to bear in mind, in actions for injuries to children, a very simple and fundamental fact, which in this class of cases is sometimes strangely lost sight of, viz., that no action arises without a breach of duty.'" Wheeling R. R. Co. v. Harvey, 77 Ohio St. 235, 83 N. E. 66, 19 L. R. A. (N. S.) 1136, 122 Am. St. Rep. 503, 11 Ann. Cas. 981.

We suppose that, if an adult person had gone upon the premises of defendant in the circumstances alleged in the complaint in this case, no one would contend that defendant would have been liable for his death or injury by falling into the "artificial pool, cistern, or reservoir," constructed and maintained by defendant. At least, it has been so held by this court, along with others, and by the Supreme Court of the United States. Athey v. Tennessee Coal, Iron & R. Co., 191 Ala. 646, 68 So. 154; Alabama Great Southern R. Co. v. Cummings, 211 Ala. 384, 100 So. 553, 33 A. L. R. 439; Sloss I. & S. Co. v. Tilson, 141 Ala. 152, 37 So. 427; United Zinc Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28. In Sloss I. & S. Co. v. Tilson, supra, the court by quotation from previous adjudications stated the doctrine to which we referred in the outset of this opinion; viz., to create a legal duty, the person who goes upon the premises of another merely for his own benefit or pleasure must sustain a relation to the owner or his business equivalent to an invitation to come upon the premises.

But plaintiff's intestate was a boy 8 years of age, and the complaint seems to charge defendant with the duty to care for intestate upon two considerations, viz., an invitation should be inferred on the attractive nuisance theory, and, in the second place, defendant negligently allowed a slime to accumulate on the sloping sides of its reservoir, so that, if a child fell in, he would be unable to get out as otherwise, plaintiff in effect asserts, he might have done by climbing back to the top of the retaining wall.

[2] The difficulty is to find a reasonable ground on which to predicate the invitation necessary to plaintiff's case. Plaintiff relies upon an implied invitation, for there was none other. But, bearing in mind the principles of decision hereinbefore stated, nothing alleged suffices to justify the implication. The allegation of count D, to quote what is the strongest case to be found in the complaint:

"Plaintiff avers that the children in great numbers, with great frequency, and for a long period of time had been resorting to said pool, picnicking there, playing there, using said cement run-a-round, using the grounding inside of said fence immediately around . said pool, and passing along to and from school by said pool within, to wit, 10 feet thereof, and over the premises same was located upon, all of which facts were known to the agent and servants of the defendant and had been known to them for a long period of time."

It is not to be doubted that, under such circumstances, defendant owed plaintiff the duty to refrain from any act calculated to inflict injury on children—or, for that matter, any one else—on the premises; but, to make defendant responsible for the mere condition of the property, an invitation must be implied. The difficulty with such cases, when decided with reference to principles of law of general observance, has always been to find just and reasonable ground on which to rest the implication of invitation, for it is hard to infer an invitation from trespasses which have only the merit of repetition, and this court has said on good authority that neither sufferance, nor permission, nor passive acquiescence is equivalent to an invitation. Atlantic Coast Line v. Carter, 214 Ala. 254, 107 So. 218. ·

The effort, as we have indicated, is to supply an invitation on the theory of attractive nuisance. That theory and doctrine were founded on Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, the original turntable case, of which case the Supreme Court of the United States, in the recent case of United Zinc Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28, observed that:

"It seems to have been assumed without much discussion that the railroad owed a duty to the boy."

The dissenting Justices in that case (258 U. S.) were of the opinion that the decisions in the turntable or attractive nuisance cases were overruled by the prevailing opinion. The majority judges, however, stated their judgment to be that:

"The doctrine needs very careful statement not to make an unjust and impracticable requirement."

And that:

"The principle if accepted must be very cautiously applied."

And this court in Athey v. Tennessee Coal, Iron & R. Co., 191 Ala. 652, 68 So. 154, noted the fact that some courts repudiate the doctrine of the "turntable cases," while some of those that acknowledge their authority evince a marked disinclination to extend it to new and different circumstances. This was repeated in Alabama Great Southern R. Co. v. Cummings, 211 Ala. 381, 100 So. 553, 33 A. L. R. 439.

In the editorial note under the case of Wheeling Railroad Co. v. Harvey, 19 L. R. A. (N. S.) 1145, after reference to cases in which liability as for attractive nuisances was at issue, it was said that:

"In the majority of cases, however, the attempt to extend the attractive nuisance doctrine to dangers of the class discussed under this subdivision of the note [meaning the subdivision discussing ponds, reservoirs, waterways, etc., as attractive nuisances] has been unsuccessful."

Quite a number of the cases on the subject are reviewed in the note referred to. In the note to Sullivan v. Huidekoper, 7 Ann. Cas. 196, a good many cases are cited to the proposition that the large majority of the decisions, including some which recognize the doctrine of the turntable cases, deny the liability of a landowner for injuries to trespassing children by reason of open and unguarded ponds and excavations upon his premises. That line of thought was followed by this court in Athey v. Tennessee Coal, Iron & R. Co., supra, and Thompson v. Alexander City Mills, 190 Ala. 184, 67 So. 407, Ann. Cas. 1917A, 721. Many cases on the subject are cited in the text of Wheeling Railroad Co. v. Harvey, supra.

[3] If there be any cogency in what has been said, there is no need for an extended discussion of appellant's second suggestion of ground of liability, viz., that defendant allowed a slime to accumulate on the sloping sides of its reservoir, thus—such is the effect of the argument—setting a trap for boys who might fall into the reservoir. A like argument appears to have been suggested in United Zinc Co. v. Britt, supra, and we have found it in some other cases. In the case just mentioned the court disposed of this suggestion in the following language:

"The liability for spring guns and mantraps arises from the fact that the defendant has not rested on that assumption [viz., the assumption that the owner of land owes no duty in the case of trespassers to remove even hidden dangers], but on the contrary has expected the trespasser and prepared an injury that is no more justified than if he had held the gun and fired it."

That, to us, seems to be a reasonable conclusion. Appellant's contention in this regard would require the owner of every pond, reservoir, or waterway to so prepare his property as that, if trespassing boys should fall in, there would be no danger of drowning. That, we think, would be an unreasonable requirement.

We trust we are as much inclined to give heed to the "yearnings of humanity" as a court in which justice is administered according to law ought to be; but established rules of law, departed from in some cases, we concede—the intolerable burden a contrary rule would place upon the ownership of property, and the general drift of the courts away from an extension of the rule of the attractive nuisance cases—these considerations induce us to hold that the demurrer to appellant's complaint in this case was properly sustained.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.