**James F. LOCKE, as father of Sean Michael Locke, a deceased minor, Plaintiff-Appellant,**

v.

**LIQUID AIR CORPORATION, a Delaware corporation qualified to do business in the State of Alabama, et al., Defendants-Appellees.**

No. 83–7150.

United States Court of Appeals, Eleventh Circuit.

March 2, 1984.

---

Clement J. Cartron, Huntsville, Ala., for plaintiff-appellant.

Robert H. Harris, Decatur, Ala., for defendants-appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Defendant Liquid Air's Decatur, Alabama, plant manufactures acetylene gas. The resulting by-product of the manufacturing process, a slurry compound of water and lime, is pumped into holding ponds or sludge pits; the lime settles to the bottom, leaving a pool of water. Lime slurry, although having a higher pH content than tapwater, is not toxic or poisonous. For several years the Liquid Air plant in Decatur operated with two slurry holding ponds. A third pond, in which plaintiff James Locke's son, Sean Locke, drowned, was constructed in 1980 and 1981 to meet the requirements of the Alabama Water Improvement Commission. This pond had not been placed into operation as a lime slurry holding pond at the time of Sean Locke's death. Lime sludge, however, had previously been dumped on the site on which this pond was excavated. In April of 1981, the excavation on this site had filled

with water to a depth of approximately eight feet. This water came from natural sources, either surface drainage or fluctuating waters of the nearby Tennessee river, and not from the pumping of lime slurry into the holding pond. The pond was roughly the size of a football field and had steep sides, with a drop of ten to fifteen feet from ground level to the water. Truck ramps led down to the water in several places along the edge of the pond. The water in the pond was a dark greenish blue and the bottom of the pond was not visible.

Liquid Air's Decatur, Alabama, plant is surrounded by houses, a school, and Thornton's trailer park. On March 13, 1981, the Decatur plant manager, Tom McCoy, submitted an expenditure request to Liquid Air's home office for fencing to secure the plant: "Since the construction of the sludge pits there has been no fence to completely surround our property. On several occasions I have noticed neighborhood children playing around the sludge pits."[1] None of Liquid Air's employees had ever seen anyone swimming in the sludge pits.

On Sunday afternoon, April 26, 1981, five minor children, including Sean Locke, who lived in nearby Thornton's trailer park rode their bicycles onto the Liquid Air plant site and up to the edge of the holding pond. None of Liquid Air's employees were present at the plant on that occasion, and the children entered the plant site without Liquid Air's knowledge or permission. Sean Locke, age nine, either waded into the pond, went swimming therein, or slipped and fell from its edge into the water, became stuck in the wet, cement-like bottom of the pond, and was drowned.

Plaintiff brought this action in Alabama state court, alleging, *inter alia,* that defendant negligently or wantonly failed to fence or post warning signs around the holding pond, and that as a proximate result thereof Sean Locke was drowned.[2] Defendant removed the case to the United States District Court for the Northern District of Alabama, and subsequently moved for summary judgment on all counts of the complaint. Defendant's motion for summary judgment was granted by the district court on the ground that the holding pond could not, as a matter of Alabama law, be characterized as a dangerous instrumentality or condition.

Plaintiff appeals the district court's grant of summary judgment on his negligence claim based on the theory of straight negligence, dangerous instrumentality, or Restatement (Second) of Torts § 339 (1965) and on his claim of wanton injury. We affirm.

## I. Disputed Factual Issues

Plaintiff claims that two disputed issues of fact preclude a grant of summary judgment in this case: (1) whether lime slurry was actually present in the pond in which Sean Locke drowned, and (2) whether defendant Liquid Air was aware of the danger posed by the holding pond to neighborhood children on its premises. We agree that the evidence presents genuine issues of fact on these claims. Viewing the evidence in the light most favorable to the plaintiff, the party opposing the motion for summary judgment, as we must on appeal from a grant of summary judgment, *Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983), we resolve these factual issues in plaintiff's favor. We find, however, that so resolved these facts do not alter the outcome of this case under the controlling rules of Alabama law, and thus are not *material* factual issues precluding the grant of summary judgment.

---

1. Record at 63.

2. Plaintiff's complaint is framed in five counts: Count I, alleging simple negligence in defendant's failure to fence or post warning signs around the holding pond; Count II, alleging wantonness; Count III, alleging the elements of straight negligence, dangerous instrumentality, or Restatement (Second) of Torts § 339 (1965), and that defendant failed to exercise reasonable care; Count IV, alleging the same elements as Count III, and that defendant acted wantonly; and Count V, alleging a claim under the Alabama extended manufacturer's liability doctrine. Plaintiff does not contest the district court's grant of summary judgment on Counts I and V.

## II. The Negligence Claim

In this case it is undisputed that nine year old Sean Locke's status at the time of his death in relation to defendant Liquid Air's property was that of a trespasser. It is well settled that under Alabama law "[t]he duty owed by a landowner depends on the status of the injured party in relation to the defendant's land. If the injured party is determined to have been a trespasser, the landowner owes only the duty not to wantonly or intentionally injure him." *Tolbert v. Gulsby,* 333 So.2d 129, 131 (Ala.1976). This rule applies to adult and child trespassers alike. *Id.* In the case of a trespassing child, however, two exceptions to this rule have been recognized by the Alabama courts: attractive nuisance and dangerous instrumentality (also referred to by the Alabama Supreme Court as "straight negligence" [3]) theories of negligence liability. Neither exception applies on the facts of this case to relieve plaintiff of the operation of the rule that a landowner is not liable for negligent injuries to a trespassing child.

The Alabama Supreme Court has consistently held that water hazards are not attractive nuisances, and thus that the doctrine of attractive nuisance [4] affords no exception to the general rule when a trespassing child is injured or killed in a water hazard. *E.g., Bailey v. City of Mobile,* 292 Ala. 436, 296 So.2d 149 (1974); *Earnest v. Regent Pool, Inc.,* 288 Ala. 63, 257 So.2d 313 (1972); *Alabama Great Southern Railroad Co. v. Green,* 276 Ala. 120, 159 So.2d 823 (1964); *Luallen v. Woodstock Iron & Steel Corp.,* 236 Ala. 621, 184 So. 182 (1938); *Cobb v. Lowe Manufacturing Co.,* 227 Ala. 456, 150 So. 687 (1933); *Cox v. Alabama Water Co.,* 216 Ala. 35, 112 So. 352 (1927). Water hazardous due to a concealed or submerged condition is included within this rule that water hazards are not attractive nuisances. *Glover v. City of Mobile,* 417 So.2d 175 (Ala.1982) (artificial whirlpools in a river); *Earnest v. Regent Pool, Inc., supra* (dirty water in a swimming pool concealing slimy, deep bottom); *Alabama Great Southern Railroad Co. v. Green, supra* (dirty water in a reservoir concealing metal spikes); *Cobb v. Lowe Manufacturing Co., supra* (suction of culvert in a drainage ditch); *Cox v. Alabama Water Co., supra* (dirty water in a reservoir concealing slimy, sloping sides). These cases rest on the assumption that water, including water concealing a submerged hazardous condition, is an obvious and patent danger reasonably appreciated by any child of sufficient maturity to be allowed abroad without supervision.

In this case, involving the drowning death of a trespassing child in a holding pond concealing a sticky lime bottom, it is clear that under Alabama law the doctrine of attractive nuisance does not provide an exception to the rule that a landowner is not liable for negligent injuries to a trespassing child. Plaintiff does not disagree, but instead claims that dangerous instru-

---

3. *See, e.g., Rose v. Miller & Co.,* 432 So.2d 1237, 1239–40 (Ala.1983); *Foster v. Alabama Power Co.,* 395 So.2d 27, 29 (Ala.1981); *Tolbert v. Gulsby,* 333 So.2d 129, 132 (Ala.1976).

4. "The attractive nuisance doctrine applies to one who maintains dangerous instrumentalities or appliances on his premises of a character likely to attract children in play, or permits dangerous conditions to remain thereon with the knowledge that children are in the habit of resorting thereto for amusement." *City of Dothan v. Gulledge,* 276 Ala. 433, 163 So.2d 217, 219 (1964). The attractive nuisance doctrine has been "[n]arrowly applied [by the Alabama courts] and rigorous standards of application have developed around its use." *Tolbert v. Gulsby,* 333 So.2d at 132. Therefore:

The doctrine is not supported unless the defendant has on his premises a condition which is naturally attractive to children at that place and is likely to be dangerous to such a person in the ordinary course of events, all of which is known to the defendant and not to the injured person and not obviously dangerous in itself; and there is no warning of the danger given; that the injured person responded to that attraction and went to the place by reason of it and was injured there by pursuing a course of conduct which was to be anticipated in the ordinary course of events. *City of Dothan v. Gulledge,* 163 So.2d at 219.

mentality, or straight negligence, theory [5] affords him such an exception. We hold that the Alabama law is clear that it does not.

■ Although dangerous instrumentality, or straight negligence, theory was arguably developed as a reaction to the restrictive use of attractive nuisance doctrine,[6] no distinction between attractive nuisance and dangerous instrumentality doctrine has been made by the Alabama Supreme Court in relation to water hazards. Thus, in *Mayo v. Mobile Asphalt Co.,* 272 Ala. 442, 131 So.2d 881 (Ala.1961), the court relied on *Cobb v. Lowe Manufacturing Co., supra,* an attractive nuisance case, in affirming the dismissal of plaintiff's dangerous instrumentality count: "We have held that water hazards are not dangerous instrumentalities and no legal duty is imposed on the owner of the property to erect barriers, or other safeguards to protect children, not invitees, from water hazards." 131 So.2d at 884. Further, water hazards due to a concealed or hidden condition is included within this rule that water hazards are not dangerous instrumentalities. *Earnest v. Regent Pool, Inc., supra* (plaintiff claimed slimy, sloping sides and bottom of a swimming pool created dangerous and defective condition; court

held that demurrer to the complaint was properly sustained); *Alabama Great Southern Railroad Co. v. Green, supra* (plaintiff claimed metal spikes concealed by dirty water in a reservoir created a dangerous condition; court held that lower court erred in overruling the demurrer to the complaint). Alabama dangerous instrumentality, or straight negligence, doctrine does not provide an exception to the rule that a landowner is not liable for negligent injuries to a trespassing child in this case.[7]

In sum, as "Alabama recognizes no exception, in the case of a child trespasser, to the conventional rule that a landowner is not liable to a trespasser on his land, when the trespasser is injured or drowns in a water hazard," *Earnest v. Regent Pool, Inc.,* 257 So.2d at 316, we hold that the district court properly concluded that insofar as the complaint is construed to state claims of attractive nuisance or straight negligence summary judgment was due to be granted in defendant Liquid Air's favor as a matter of law.

Plaintiff seeks to avoid Alabama's straight negligence precedent concerning water hazards by claiming that the adoption of the Restatement (Second) of Torts § 339 (1965) [8] in *Tolbert v. Gulsby* tacitly

---

5. "The rule on which the straight negligence cases have proceeded is this: If a landholder creates or maintains upon his premises, where he can reasonably foresee the presence of children, a dangerous situation under circumstances which he should reasonably anticipate will likely or probably cause bodily harm to them, he is liable in damages to one proximately injured by such situation whether the child is an invitee, a licensee, or a trespasser." *Tolbert v. Gulsby,* 333 So.2d at 134 (*quoting* Fulford, *The Tort Liability of Possessors of Property to Trespassing Children in Alabama,* 11 Ala.L. Rev. 1, 15 (1958)).

6. · *Tolbert v. Gulsby,* 333 So.2d at 132.

7. Plaintiff cites two cases in which the Alabama Supreme Court has found a duty not to negligently injure a trespassing child under a straight negligence approach: *Alabama Clay Products v. Mathews,* 220 Ala. 549, 126 So. 869 (Ala.1930); *Thompson v. Alexander City Cotton Mills Co.,* 190 Ala. 184, 67 So. 407 (Ala. 1914). Each case involved the water hazard of boiling or scalding water. In light of the great weight of Alabama precedent to the contrary,

we do not read these cases, apparently the only cases in which a duty was found involving a water-related injury, as altering the rule that water hazards due to a concealed or submerged condition is not a dangerous instrumentality for purposes of Alabama straight negligence doctrine.

8. Section 339 provides that:
   A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
   (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
   (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
   (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

overruled these cases. Plaintiff further claims that application of Section 339 would preclude summary judgment in this case. We disagree.

In *Tolbert v. Gulsby,* involving a trespassing child who was shot in the eye with an air rifle left in defendant's carport, the court set forth the elements of Alabama straight negligence doctrine and stated that:

> This Alabama doctrine is very similar to the statement of landowner liability to trespassing children in Restatement of Torts 2d, section 339 (1965)...
>
> .    . .    .    .    .
>
> This court has previously noted the similarity between Alabama cases using the straight negligence doctrine in relationship to trespassing children and Section 339, Restatement of Torts 2d; however, for clarity and certainty's sake now and in the future, this court adopts Section 339, Restatement of Torts 2d, as controlling, regardless of whether the children are licensees or trespassers. 333 So.2d at 133, 135.

The *Tolbert* court gave no indication that the adoption of Section 339 overruled prior straight negligence precedent; indeed, a comparison of the elements of Alabama straight negligence doctrine and Section 339 leads to the conclusion noted by the court in *Tolbert* that the two theories are very similar, if not identical.[9]

The strongest support for plaintiff's claim that *Tolbert* overrules prior Alabama straight negligence precedent concerning water hazards is found in *Earnest v. Regent Pool, Inc., supra.* Decided before *Tolbert,* the court in *Earnest* reaffirmed its previous holding in *Alabama Great Southern Railroad Co. v. Green* that straight negligence theory does not apply to water hazards, including water hazardous due to concealed or submerged conditions. The *Earnest* court declined to adopt Section 339, stating that:

> Were we to adopt the rule stated in § 339, ... we would in effect overrule well settled decisions of long standing which hold that where the doctrine of attractive nuisance is not applicable because the danger is patent and obvious to the trespassing child, no exception will be made to the conventional rule in his case. 257 So.2d at 317.

However, in a post-*Tolbert* water hazard case, *Smith v. United States Steel Corp.,* 351 So.2d 1369, 1370 (Ala.1977), plaintiffs argued on appeal that the water hazard involved was a dangerous instrumentality and that "[t]he rule frequently announced and recently restated in *Earnest v. Regent Pool, Inc.,* ... was at least partially tacitly overruled by *Tolbert v. Gulsby.*" The *Smith* court affirmed the trial court's grant of summary judgment. Additional post-*Tolbert* cases have adhered to the holdings of the straight negligence decisions concerning water hazards, including water hazardous due to a concealed or submerged condition. *See, e.g., Glover v. City of Mobile, supra; Wright v. Alabama Power Co.,* 355 So.2d 322 (Ala.1978). We conclude that the *Tolbert* court's adoption of Section 339 did not overrule prior Alabama straight negligence precedent relating to water hazards.

This conclusion is further supported by Section 339, which generally precludes recovery for negligent injuries resulting from water hazards based on the same principles

---

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children.

**9.** *Cf.* Section 339 *with Tolbert v. Gulsby,* 333 So.2d at 134–35. Plaintiff claims one distinction between Section 339 and straight negligence doctrine: Section 339(d) provides the element that "the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved," allegedly not found in Alabama straight negligence doctrine. This is incorrect. "Liability [under Alabama straight negligence doctrine] depends in part upon the probability of danger taken in connection with the instrumentality's usefulness in defendant's business." *Id.* at 134 (*quoting* Fulford, 11 Ala.L.Rev. at 17.).

underlying Alabama attractive nuisance and straight negligence doctrine:

> There are many dangers, such as those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it. Restatement (Second) of Torts § 339 comment j (1965).

Illustration 6 to comment j [10]:

> A has on his land a small artificial pond in which, to A's knowledge, children of the neighborhood frequently trespass and swim. A takes no precautions of any kind. B, a boy ten years old who cannot swim, trespasses on A's land, enters the pond and is drowned. A is not liable to B.

The rule of the Alabama attractive nuisance and straight negligence cases parallels that of Section 339: water hazards are usually not dangerous instrumentalities.

A further inquiry under Section 339 remains: is a submerged condition hidden by the water a factor creating a special risk that the child will not avoid the danger? Alabama attractive nuisance and straight negligence cases have both answered this question in the negative. *E.g., Alabama Great Southern Railroad Co. v. Green,* 159 So.2d at 830 (plaintiff claimed metal spikes concealed by dirty water in a reservoir created a dangerous condition; the court held that "[t]he condition of the pool or pond involved in the present case ... [was] such that any person of reasonable maturity should have appreciated its hidden dangers. No special protection is accorded children under such circumstances."). Plaintiff has failed to demonstrate that under Section

339 an Alabama court would refuse to follow this precedent, and we therefore conclude that under both Section 339 and previous Alabama law a holding pond concealing a sticky lime bottom is not a condition creating a special risk that children will not appreciate the danger.

We hold that the district court did not err in granting summary judgment in defendant Liquid Air's favor on plaintiff's negligence claim based on the theory of dangerous instrumentality, straight negligence or Section 339, as the holding pond could not be characterized as a dangerous instrumentality as a matter of Alabama law.

### III. *The Wantonness Claim*

■ Plaintiff contends that the district court erred in granting summary judgment on his claim that the defendant acted wantonly in failing to fence or post warning signs around the holding pond. Wantonness has been defined by the Alabama Supreme Court as "[t]he conscious doing of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission of such duty injury will likely or probably result." *Tolbert v. Gulsby,* 333 So.2d at 131. Plaintiff claims that the Decatur, Alabama, plant manager's expenditure request for fencing of March 13, 1981, provides direct proof that Liquid Air was aware of the presence of trespassing children around the holding ponds, and that Liquid Air was aware of the danger posed to the children by the holding ponds. Again, we find plaintiff's claim precluded by Alabama precedent, and thus hold that the district court did not err in granting summary judgment in defendant's favor on plaintiff's wantonness claims as a matter of Alabama law.

*Mims v. Brown,* 49 Ala.App. 643, 275 So.2d 159 (1973), and *Cox v. Alabama Water Co., supra,* are directly on point and control the disposition of plaintiff's wantonness claims. In *Mims,* plaintiff's trespassing nine year old child was injured while

---

**10.** The appendix to Section 339 states that Illustration 6 is based, among other cases, on

*Luallen v. Woodstock Iron & Steel Co.,* 184 So. 182 (Ala.1938).

playing in defendant's swimming pool. The complaint alleged that the bottom of the swimming pool was slippery and that:

> [T]he defendant, knowing or having reason to believe that children resorted to or would resort to said synthetic pool to play in, and that it was in such condition, an instrument dangerous for children to play in, wantonly allowed or suffered the synthetic pool to remain unattended, uninclosed and unguarded. 275 So.2d at 160.

The court held that these facts did not show wantonness, and thus that plaintiff's wantonness claim was properly dismissed. In *Cox*, plaintiff's trespassing eight year old child was drowned in defendant water company's reservoir. The reservoir, some 130 feet long, 40 feet wide and 25 feet deep, had concrete sides sloping at an angle of 45 degrees. Over time, slime, moss or silt approximately two inches thick had grown on the concrete walls, which, combined with the sloping sides, made it impossible for a child to get out of the reservoir once he had fallen in. The reservoir was not enclosed by a fence. The reservoir was built on a path leading to a nearby school and at a place where children played. The complaint alleged that defendant's employees knew that children frequently passed the reservoir on their way to school and knew that children had for the past four years picnicked and played around the edge of the reservoir. The complaint further alleged that the defendant's employees used a plank to cover the slime and moss before descending into the reservoir to drain it, and were thus aware of the dangers posed to the children by the hidden slime in the reservoir. Based on these facts, the court held that plaintiff's complaint, including his wantonness claim, was properly dismissed.

We find *Mims* and *Cox* indistinguishable from the present case, and thus affirm the district court's disposition of plaintiff's wantonness claim.

## IV. *Conclusion*

In this case the controlling principles of Alabama law are clear. We therefore AFFIRM the district court's grant of summary judgment in defendant's favor on plaintiff's claims of negligence based on dangerous instrumentality, straight negligence or Section 339 theory and wantonness.