# McCauley *v.* Tenn. Coal, Iron & Railroad Company.

*Action for Damages against Railroad Company, by Administrator of Person Killed.*

1, *Contributory negligence by passenger standing on platform of car.* A regulation forbidding passengers to stand on the platform of a moving car, is a reasonable and proper rule, and a passenger who knowingly violates it, thereby exposing himself unnecessarily, does so at his own peril, and is guilty of contributory negligence, which bars a recovery of damages for personal injuries sustained.

2. *Negligence towards passenger, licensee, or trespasser.*—A person in the service of a contractor engaged in getting out timbers for a railroad, who, with his fellow-workmen, rides on a train which is intended only for the use of the railroad employés, knowing that no other persons are allowed to ride on it without the consent of the superintendent, paying no fare, but using the train as an accommodation in going to and returning from their work, is not to be regarded as a passenger, nor entitled to that degree of care which the law gives to passengers; nor can he be regarded as a mere trespasser, when it is shown that the workmen so used the train for several months, with the knowledge of the conductor, and without objection from him, and there is also evidence tending to show that the superintendent had knowledge of the fact; yet, if the superintendent had not in fact given permission, his knowledge and implied acquiescence in the use of the car by the workmen so employed, would only operate as a mere license to them, and impose on them all risks of the carriage, "except such as might result from wanton or intentional wrong, or a failure to exercise due care to avert injury after the danger is apparent."

3. *Presumption in favor of charges given.*—When the bill of exceptions does not purport to set out all the evidence, this court will indulge the presumption that there was evidence which justified the affirmative charges given by the court.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by James McCauley, as administrator of the estate of Henry McCauley, deceased, to recover damages for the personal injuries which resulted in the death of his intestate; and was commenced on the 27th July, 1889. The complaint contained two counts, the first of which alleged that the intestate, at the time of the accident which caused his death, was a passenger on one of the defendant's trains; that the train was run "carelessly, negligently and recklessly"

by the conductor and engineer, having no bell-cord attached to the cars, nor other means of giving a signal to stop or check the train, not keeping a proper look-out for obstructions on the track, nor checking the speed of the train when a cow was seen on the track, nor sounding the cattle alarm; and that in consequence of this carelessness, negligence and recklessness, the train ran over a cow, which was pushed ahead of the cars for some distance, and caused the derailment of the car in which the intestate was riding, whereby he received the injuries which proved fatal. The second count alleged that the intestate, at the time he was injured, was in the service of one J. W. Watts, who had a contract with the defendant for the performance of certain work and labor, which rendered it necessary for him to employ a number of workmen; "that it became and was necessary and expedient that said workmen should be transported to their labor by means of one of defendant's trains, and it had been defendant's custom and practice for a long time, to-wit, one month, to so transport them; that on said 18th June, 1889, said intestate, with the other workmen and employès of Watts, was on said train by the invitation and license of defendant, and for the valuable consideration of said contract, was being carried to their said work;" that the train was run "carelessly, negligently and recklessly," &c., as in the first count. The only plea was the general issue. The material facts are stated in the opinion.

The court gave several charges to the jury, instructing them, in effect, that the plaintiff's intestate, under the evidence, was not a passenger, and was not an employè of the defendant; that he was a trespasser, if he was riding on the train without the permission of the superintendent, and knew that it was forbidden; that he was guilty of contributory negligence, if he was riding on the platform at the time of the accident; and that they were not authorized by the evidence to find that he was injured willfully, wantonly, or recklessly. The plaintiff excepted to each of these charges, and here assigns them as error.

BOWMAN & HARSH, for appellant.

HEWITT, WALKER & PORTER, contra.

COLEMAN, J.—Railroads are held strictly responsible for all damages sustained by passengers travelling upon their lines, by reason of fault or negligence on their part; and by statute in many cases when damage results, the presumption of negligence arises. For their own protection railroads are

permitted to make all reasonable rules and regulations conducive to the safety of passengers. A regulation which forbids passengers to stand upon the platform while the car is in motion, is not only reasonable, but proper, and if a passenger, having knowledge of such regulation, unnecessarily exposes himself, in violation of the rule, he does so at his own peril, and not at the peril of the railroad. This is the law clearly stated in the case of *Ala. Gr. So. R. R. Co. v. Hawks*, 72 Ala. 116, and is fully sustained both upon reason and authority.

The testimony conflicted as to whether plaintiff's intestate was inside the car or upon the platform when the car struck the cow, and which caused the car to leave the track. There was evidence tending to show that deceased and one other person were upon the platform when the cow was struck, and that both persons fell between the cars and were run over and killed. There was evidence tending to show that none of the persons who remained inside the cars were seriously hurt, and the evidence tended to show there was room inside for deceased if he had chosen to remain inside. There was evidence, also, that plaintiff's intestate knew of the regulation which prohibited persons from being on the platform while the car was in motion.

The correctness of the rulings of the trial court in giving or refusing charges must always be tested by reference to the testimony before the jury. The evidence showed that the train upon which deceased was riding, was used by the defendant to carry its own employés and their tools to and from their place of work, and was not used for the transportation of passengers. It was a rule of defendants, and known to plaintiff's intestate, that no one should ride upon this train except defendant's employés, without the permission of the defendant's superintendent, who at this time was one McCormick. The evidence tended to show that one J. W. Watts was getting out timbers for defendant's company at so much per thousand at a place along defendant's line, and that Watts had a number of men employed in his service, and among them was plaintiff's intestate, and that his (Watts') employés boarded with him at Pratt Mines. Watts and his employés had been in the habit of boarding this train every morning as it passed Pratt Mines, to go out to their work, and, as it returned in the evening, would come in on it to their place of lodging. Watts and his employés paid no fare, and none was demanded of them. The witness Watts testified, that for six months he and his employés had been in the habit of going out to his work and returning on this train, without objection from any one; and this witness without objection was permitted to tes-

[McCauley v. Tenn. Coal, Iron & Railroad Company.]

tify, that he was certain the superintendent knew of this habit. There was evidence tending to show "that the superintendent had no knowledge that any one who was not an employè of the defendant rode on the train." We do not think, under this state of the evidence, the court as a matter of law was authorized to assert that defendant's intestate was a trespasser. If the superintendent knew that for six months, morning and evening, Watts and his employès rode upon this train to and from his work, and was still engaged in the same work, a license to continue to ride upon the train might be presumed, unless notified to the contrary by the conductor or superintendent.

It is clear that defendant's train was not a passenger train within the meaning of the law; and that plaintiff's intestate was not a passenger entitled as a matter of legal right to ride upon the train. The evidence, favorably stated for the plaintiff, shows that defendant owed no duty to plaintiff's intestate as a passenger; that, as a matter of convenience, Watts and his employès availed themselves of defendant's cars, used by defendant for its own employès only, and not for the use of passengers, to reach their work, thus saving time, expense and labor, without a profit or benefit to the defendant. It would be gross injustice, under such circumstances, to hold defendant to the same degree of care as the law affords to passengers.

The law, sustained by many authorities, and founded on common sense, imposes an obligation upon any person who invites or induces another to come upon his premises, to provide for his security, and guard him against dangers to which he may be exposed; but one who avails himself of a mere license, and enters upon the premises of another, has no right to require of the owner that he keep his premises in a safe condition; and the owner, in such cases, is not responsible except for wanton or intentional injury. The few exceptions to this general rule have no bearing in this case. The facts of this case clearly distinguish it from those where the carrier, by invitation, induces another to enter the train, or undertakes to carry another by contract, express or implied, whether made with the person to be carried or with another for him, or with one or more for the carriage of an indefinite number of unknown persons, as where a car may be chartered by one or more, for an excursion, and similar cases, or where the law imposes a duty to carry, or this duty arises from contract; in all of which it has been held, that the railroad was required to exercise the same care and diligence for the safety of such persons, as if they were strictly passengers.—Hutchinson on Carriers, §§ 563–4. The defendant railroad company owed no such duty to plaintiff's intestate. He knew that the train was

not a passenger train; that its only purpose and use was to carry defendant's own employès to and from their work; and that without the consent of the superintendent no one, not even with the consent of the conductor, not an employè of the defendant, was allowed to ride upon this train. Not having permission of the superintendent, the knowledge and acquiescence of the superintendent that he rode upon the train, availing himself of this means of transportation for his own convenience and comfort, was at most a mere license, in which the licensee assumed all risk of the carriage except such as might result from wanton or intentional wrong, or a failure to exercise due care to avert the injury after his danger was apparent,—a duty imposed upon all persons and corporations under similar circumstances, in view of the great value of human life and limb.—*Frazier v. L. & N. R. R. Co.,* 81 Ala. 185.

The rule that a person, when exposed to sudden and unexpected danger, is not responsible for acting without judgment, or "wildly," depends materially upon the facts and circumstances of the case, and as to whether he has wrongfully and voluntarily put himself in a place of danger.

The court very properly charged the jury that they "were not authorized to find from the evidence that the injury to plaintiff's intestate was inflicted either willfully, wantonly or recklessly."

After the most favorable consideration of the evidence for plaintiff, we are of the opinion the court would have been justified in giving the general affirmative charge for the defendant. The error in charging that plaintiff's intestate was a mere trespasser, was error without injury, inasmuch as the defendant was entitled to the general affirmative charge.

The judgment must be affirmed for another reason. The bill of exceptions does not purport to set out all the evidence, or substantially all; and under such circumstances, we must presume there was evidence to support the ruling of the court in the charges given.

Affirmed.