165 So. 824

**JEWEL TEA CO., Inc., v. SKLIVIS.**

**6 Div. 741.**

Supreme Court of Alabama.

Jan. 16, 1936.

Rehearing Denied March 5, 1936.

Wm. H. Ellis and Murphy, Hanna, Woodall & Lindbergh, all of Birmingham, for appellant.

Taylor & Higgins, of Birmingham, for appellee.

BOULDIN, Justice.

Counts A and B on which the case was tried charge that the agent or employee of defendant, while operating a truck in the line of his employment, after becoming aware of the perilous position of plaintiff, a boy six years of age, on or near the right front fender of such motor vehicle, so negligently operated said truck as to cause the plaintiff to fall therefrom, resulting in personal injuries for which suit is brought. Count B adds that said employee became aware of the danger of plaintiff falling from said motor vehicle, and thereafter so negligently operated same, etc.

Defendant, appellant here, was operating a delivery truck, carrying packages of merchandise, and delivering same to customers along certain streets of the city of Birmingham. Without dispute, it was no part of the business to carry passengers, gratuitously or otherwise, and the driver operating the truck was specially instructed not to allow persons on the truck, other than the employees of his company.

A placard, "No passengers allowed," was posted inside the cab.

Plaintiff's evidence tended to show that the driver, nevertheless, permitted the child to ride on the running board. Further evidence tended to show the child was riding on the right front fender with the knowledge of the driver when starting from a stop made several blocks before reaching the point of the accident. It appears without dispute that the driver discovered the child in that position a block or two from the point of the accident, took no steps to remove or protect the child, and on turning a corner the child was thrown or fell to the street and was injured. Evidence for plaintiff tended to show higher speed than ordinary in turning the corner; defendant's evidence was to the contrary.

We may say broadly, the evidence on the whole supported a reasonable inference that

riding on the front fender, with no means of holding on, was a position of peril for a child of such tender years, which, on discovery by the driver, would bring home to a person of ordinary judgment knowledge of peril from the operation of the truck in the usual way, turning corners and the like.

The main question raised by appellant goes to the question of the employer's liability under the doctrine of respondeat superior for the negligence charged in the complaint.

More far-reaching is a further insistence that we should here declare that under no feature of the evidence is the employer liable for the negligence of the driver of the car, resulting in this injury.

█ It is the law that a driver of a motor vehicle in the conduct of a business having no connection with the carriage of persons, and especially where he is specifically directed not to do so, is wholly without the line and scope of his employment when he, of his own accord, or at the instance of a person wanting a ride, undertakes to carry a person gratuitously or otherwise. He can establish no conventional relation, whether of passenger or guest, between the person carried and the employer.

Nor can he by mere tolerance of a person on the vehicle impose on his employer any duty.

█ Such a person, taken on by the driver, or getting on without consent, and riding by mere sufferance of the driver, can have no claim on the employer simply because he is on the vehicle. As between such person and the employer he is a trespasser. This applies to infants as well as to adults.

But there are legal duties toward trespassers; duties based on the common obligations of humanity, springing not out of conventional relations, but out of common regard for the safety of life and limb.

█ Many cases have declared, in general terms, that the employer is liable only for wanton or willful injuries inflicted by his employee on a person riding on a vehicle as a trespasser, while the employee is operating the vehicle in regular course of the employer's business.

One question here presented is whether a like rule applies to simple negligence after discovery of peril.

In many cases no question of negligence after discovery of peril was involved; where, for instance, the employee, without authority and against the orders of his employer, takes a guest into the vehicle. The ordinary hazard of such mode of travel does not constitute an imminent peril, imposing the duties which arise on discovery of present peril in the particular case. Again, in case of an adult riding in an exposed position on the running board, he may be charged with concurring contributory negligence as to the hazards of ordinary movements of the car.

But dealing with a child of tender years, incapable of contributory negligence, whose extreme youth contributes to the imminence of his peril, and the knowledge thereof on the part of the driver, is there no liability of the employer for negligence of the employee after discovery of his peril?

Liability for negligence after discovery of peril rests on the same broad basis of humanity which renders the employer liable for wanton or willful injury inflicted by his employee while acting within the line and scope of employment. Several of our cases, as well as those of other jurisdictions, have coupled the two together in the statement of the law; not that the measure of damages is the same, but liability for actual damages. We know of no excuse for injuring a person seen in a position of manifest peril, if reasonably it may be avoided, unless he is also guilty of concurring negligence.

██ Stating the law of the case before us, if this driver had discovered this child sitting in the street in the path of his car, no one would question the liability of the master for the negligence of the servant, resulting in injury, after discovery of the peril of the child. That the child's position of peril was on the car, whether with or without the driver's fault, can make no difference in principle. If he was in a known position of peril, there was a duty to remove such peril before proceeding in such way as would probably result in his injury. While the act of the agent in taking the child on the truck, or permitting him to be on it in a place of peril, may be regarded as the act of a third person in so far as the employer is concerned; yet when the servant operates the truck in the business of the employer in the face of known peril to the child, the employer's liability cannot be denied because his agent, without right, put the child in the place of peril. That the driver was operating the car at the time in the line and scope of his employment is not to be questioned. We adhere to our oft-stated rule that the employer is liable under

the doctrine of respondeat superior for negligence of the employee in the line and scope of his employment, notwithstanding the employer has taken every precaution in selecting and instructing the employee. We are not disposed at this day to re-examine the basis of this rule, nor can we see the wisdom of following any cases which would make an exception in favor of employers who must operate motorcars in the conduct of their businesses.

We conclude there was no error in overruling the demurrer to counts A and B, and the evidence made a case for the jury on those counts.

Without reviewing our cases, or those of other jurisdictions, we cite the following as supporting the principles here stated: McCauley v. Tenn. Coal, Iron & Railroad Co., 93 Ala. 356, 9 So. 611; Anniston Electric & Gas Co. v. Rosen, 159 Ala. 195, 48 So. 798, 133 Am.St.Rep. 32; Lawrence v. Kaul Lumber Co., 171 Ala. 300, 55 So. 111; Montgomery Light & Traction Co. v. Baker, 190 Ala. 144, 67 So. 269; Barker v. Dairymen's Milk Products Co., 205 Ala. 470, 88 So. 588; McGhee v. Birmingham News Co., 206 Ala. 487, 90 So. 492; Southern Ry. Co. v. Wright, 207 Ala. 411, 92 So. 654; St. Louis-San Francisco Ry. Co. v. Robbins, 219 Ala. 627, 123 So. 12; Perry Supply Co. v. Brown, 221 Ala. 290, 128 So. 227; Alabama Produce Co. et al. v. Smith, 224 Ala. 688, 141 So. 674; First Nat. Bank of Dothan et al. v. Sanders, 225 Ala. 417, 143 So. 578.

There was no error in sustaining plaintiff's objection to the question to the driver: "Was Gus Sklivis on that truck that day against your wishes?"

The witness had given fully his version of how the boy came to be on the truck, and when he first knew it. As for this appellant, its position was unchanged by the fact inquired about.

The same must be held as to the question: "When you were carrying Gus Sklivis were you obeying instructions or disobeying them?"

This matter had already been gone into fully without dispute. The question would imply the employer's responsibility would be less if the driver was disobeying instructions. This is not the law in a case of negligence after discovery of peril.

The case of Hodges v. Wells, 226 Ala. 558, 147 So. 672, presented different issues.

Coming to the question of motion for new trial because of excessive verdict, we are impressed there is merit in this assignment of error.

The verdict was for $10,000. This was reduced by the trial judge to $8,000.

It appears the bone of the right upper arm was fractured a short distance above the elbow. There was some evidence that one or more wheels of the truck ran over this arm. After walking home, some blocks away, the child was taken to the hospital, the arm set, and put in a cast until apparently healed. It developed the arm was stiff. Examination by X-ray followed, disclosing that loose fragments of the bone were embedded in the muscles. These were removed. The bone showed smooth and healed. Later infection developed calling for reopening of the wound and treatment. All this involved pain, off and on, for some weeks.

The only permanent injury, however, grows out of a stiffness or want of free use of the arm. X-ray examination just before the trial (a year after the first X-ray) developed this was due to a growth or spur, a callous enlargement of the bone, plainly visible at the point of the injury.

Three physicians testify. They virtually agree that this is a permanent impairment of the use of the arm, unless removed by an operation, and that the results of an operation are problematical.

The difficulty is to determine the extent of such disability. This condition may grow and cause the arm to be less flexible at the elbow. One physician says, and the others do not testify to the contrary, that the use of the hand, shoulder, and turning at the elbow joint are not materially hindered, except in folding the front arm back toward the shoulder. His view is that there is about 15 per cent. disability at present.

As we read the entire evidence, it does not appear likely this will in future interfere with the flexing of the elbow so as to bring the forearm up to right angles with the upper arm, if not farther. One physician says this enlargement may grow until the arm becomes stiff at the elbow, but gives no positive opinion on this point. We think the extent of impairment is too little at present, and future further impairment too indefinite to warrant a verdict for $8,000. If the plaintiff will enter a remittitur in the sum of $2,000 within thirty days, thus reducing the judgment to $6,000 as of the date of its rendition, the judgment will stand affirmed.

Otherwise, it will be reversed and remanded.

Affirmed conditionally.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.