195 So. 736

### POLLARD v. McGREGGORS.

### 7 Div. 595.

Supreme Court of Alabama.

March 28, 1940.

Rehearing Denied May 9, 1940.

W. H. Sadler, Jr., of Birmingham, for appellant.

468

Harsh, Harsh & Hare, of Birmingham, for appellees.

GARDNER, Justice.

The defendant is the receiver in charge of the operation of the Central of Georgia Railway.

For many years, in the town of Vincent, Alabama, a given area of the right of way was used as a place for the acceptance of crossties offered for sale by different persons in that community. The practice was for the seller to bring the crossties and stack them at this place, where they would remain until defendant's inspector made his inspection accepting those meeting specifications, and rejecting those that did not. There were requirements for stacking the ties, which were 7 inches by 9 inches by 8 feet, and to be arranged in stacks 5 or 6 feet high. They were stacked in alternate layers of two and seven, and two outside ties of the layers of seven and the layers of two being placed on their sides so as to facilitate inspection. The stacks were about 5 feet apart.

Late in the afternoon of a December day, Howard McGreggors, twelve years of age, and his brother Henry, twenty-two months younger, were playing on the piles of crossties. Henry jumped safely from one stack to another, and Howard followed, but lost his balance and fell backward. Henry testified: "My brother was killed when jumping from one crosstie pile to another, and when he jumped he fell back and knocked a crosstie down with his heel and he fell on two cull ties. * * * When he fell back his heel hit it (the crosstie, we interpolate) and knocked it off." The witness further states: "Two crossties that were on the top row, and on the outside, were lying on edge. The one that fell on my brother was lying on edge. When he fell this crosstie hit him. * * * The narrow edge of that crosstie was crooked. When you set that crosstie on its narrow edge it was wobbly. * * * I jumped from the same stack of crossties that he jumped from and to the same stack that he jumped to. * * * When he

fell backwards his heel knocked the wobbly crosstie off and it fell down on him, killing him. * * * It was the top crosstie. * * * I saw the crosstie which fell on my brother fall. * * * When that crosstie fell I could look at it and tell it was crooked. I could see it was crooked when I stood on the other stack of crossties. * * * The tie that I say was standing on edge could be seen all right. It wasn't covered up. I could see that the crosstie was standing on edge. * * * I said awhile ago the tie was wobbly. * * * I could tell it was wobbly when my brother's heel knocked it off. It was on that that I was basing my statement that the tie was wobbly." Henry and his brother had lived in Vincent about eight months, and were "down there playing on these ties nearly every day." Howard's father testified that the crossties were stacked at this time as they had always been, the end ones stacked on the edge; and he described the tie that fell on Howard as "a twisted or curved tie."

Specifications disclosed that for acceptance there was allowance for a curve in a tie. It appears these ties had been stacked for about three weeks, and were the property of one McGraw, who had them there for inspection and sale to defendant. McGraw had bought them from other parties, who, according to custom, stacked them there for inspection. No representative of defendant is there to receive them as they are brought up and stacked. The purpose of placing end ties on edge was for the better inspection of those that are laid flat.

Plaintiff's evidence tended to show that children played on these crossties with much frequency without warning, and in plain view of defendant's agents. Plaintiff, father of Howard, had seen his children and others playing on these stacks, but never told any of his children to stay off except his little boy. "Howard had been on the ties at other times. * * * I never did tell Howard to stay off the ties."

The foregoing statement should suffice as presenting the salient features of the case, both for plaintiff and defendant.

Plaintiff insists there was actionable negligence of defendant in permitting the crossties to be stacked on its own premises by others with the curved or twisted tie

that fell placed on edge and in position to be disturbed from its resting place and knocked down by a child playing on the stack.

■ Of course for a recovery in actions of this character, there must first be shown a breach of duty. Cox v. Alabama Water Co., 216 Ala. 35, 112 So. 352, 53 A. L.R. 1336. That a child, as well as an adult, may be a trespasser is well settled by our cases (Luallen v. Woodstock Iron & Steel Corp., 236 Ala. 621, 184 So. 182); and under the uncontroverted proof, Howard, the unfortunate boy, must be held to have been a trespasser. Upon general principle, therefore, defendant owed him no duty save not to wantonly or intentionally injure him.

Plaintiff's right of recovery must rest therefore upon the doctrine of the turntable, or, as otherwise denominated, attractive nuisance cases. But we think the authorities very generally deny recovery upon such a state of facts, and that they are in harmony with our own decisions treating kindred questions.

Turning first to authorities elsewhere, we find the decided weight against a recovery upon such facts as here presented. Perhaps the case of Carr v. Oregon-Washington R. & Nav. Co., 123 Or. 259, 261 P. 899, 904, 60 A.L.R. 1434, from the Supreme Court of Oregon contains the fullest discussion of any, with citation of other authorities, and is here much in point. The conclusion of nonliability is in fact rested upon the holding that crossties stacked on the railroad right of way do not constitute such an attractive nuisance as to bring the case within the doctrine of turntable cases, the court saying: "If the law should regard such a common object as a pile of ties an attractive nuisance, it would lead to vexatious and oppressive litigation and impose upon owners a burden of vigilance and care which would materially impair the value of property and seriously cripple owners in making beneficial use of the property." The opinion cites Great Northern R. Co. v. Willard, 9 Cir., 238 F. 714, 151 C.C.A. 564; Tomlinson v. Vicksburg, S. & P. R. Co., 143 La. 641, 79 So. 174; Missouri, K. & T. R. Co. v. Edwards, 90 Tex. 65, 36 S.W. 430, 32 L.R. A. 825; Jenkins v. Gr. Western R. Co., (1912) 1 K.B. 525–C.A.; Kramer v. Southern R. Co., 127 N.C. 328, 37 S.E. 468, 52 L.R.A. 359, as involving the very question

there presented, and as supporting the conclusion reached. As to the Kramer case, the Oregon court notes that plaintiff there recovered upon the theory the ties were placed in a public street, but that the North Carolina court observed that had the ties been placed upon defendant's premises, the result would have been otherwise.

The Oregon court in its opinion directs attention to other decisions on kindred situations where liability was denied, among them, Sandstrom v. Minneapolis, St. P. & S. S. M. R. Co., 198 Mich. 99, 164 N.W. 472, a child injured while playing upon a pile of logs on defendant's premises; Branan v. Wimsatt, 54 App.D.C. 374, 298 F. 833, 36 A.L.R. 14, 19, a child injured by the falling of a lumber pile; and Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L.R. A.,N.S., 480, 118 Am.St.Rep. 391, 10 Ann. Cas. 807, where the holding was that a lumber pile was not an attractive nuisance within the doctrine of the turntable cases. A number of other cases are cited to like effect as to lumber piles, with like conclusion as to a pile of stones and still another steel girders.

■ The facts in the Tomlinson case, supra, from the Louisiana court are strikingly similar to those in the instant case, and that court, we think, correctly observed that the doctrine plaintiff relies upon is confined to cases where the dangerous agency is so obviously tempting to children that the owner is guilty of negligence for failing to observe and guard against the temptation and danger. The court then proceeds to make the following pertinent observation [143 La. 641, 79 So. 175]:

"If a pile of cross-ties is so obviously inviting as a plaything for children that it is negligence, per se, for the owner of the premises not to observe and guard against the danger of such temptation, what should we say of any wood pile or lumber stack, a ladder, fruit tree, or any other object not less tempting to children, nor less dangerous for them to climb or play upon, than is a pile of cross-ties?

"We must bear in mind, with due respect to the parents and their children, that the duty of protecting children from the danger of playing upon a pile of cross-ties belongs more to the occupation of rearing children than to the business of handling cross-ties. We do not mean that there was

negligence or failure of duty on the part of the parents in this instance, but merely that there was no negligence or failure of duty on the part of the defendant."

But we forego further discussion, as we are persuaded that, both upon reason as well as the decided weight of authority, the stacks of crossties did not constitute an attractive nuisance within the influence of the principle for which plaintiff contends. This conclusion is in harmony with the principles recognized by this Court in Cobb v. Lowe Mfg. Co., 227 Ala. 456, 150 So. 687; Athey v. Tennessee Coal & Iron Co., 191 Ala. 646, 68 So. 154; Cox v. Alabama Water Co., 216 Ala. 35, 112 So. 352; Ford v. Planters' Chemical Co., 220 Ala. 669, 126 So. 866; Luallen v. Woodstock Iron & Steel Corp., 236 Ala. 621, 184 So. 182.

Perhaps like result would be reached upon consideration of the principle recognized in our decisions that the doctrine of the turntable cases was inapplicable where the danger is obvious and patent. But as the foregoing consideration is decisive of the case, a consideration of this latter principle need not be had. Williams v. Bolding, 220 Ala. 328, 124 So. 892; Ford v. Planters' Chemical Co., supra; Luallen v. Woodstock Iron & Steel Co., supra.

The conclusion is that the defendant was due the affirmative charge.

We have not overlooked proof concerning the death of the Carroll boy occurring while playing on crossties on these same premises some twenty-five or thirty years ago, and the defendant's objection thereto, but we consider this question immaterial as to the result reached, and needs no discussion or separate treatment here.

For the refusal of the affirmative charge, requested by defendant, the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

On Rehearing.

PER CURIAM.
Application for rehearing overruled.

GARDNER, C. J., and THOMAS, BOULDIN, and FOSTER, JJ., concur.