25 So.2d 37

### BIRMINGHAM ICE & COLD STORAGE CO. v. ALLEY.

#### 6 Div. 385.

Supreme Court of Alabama.

Dec. 20, 1945.

Rehearing Denied March 7, 1946.

London & Yancey and Chas. W. Greer, all of Birmingham, for appellant.

Taylor, Higgins, Koenig & Windham and Francis H. Hare, all of Birmingham, for appellee.

THOMAS, Justice.

The suit was for personal injury. The verdict of the jury was for defendant. The only assignment of error challenges the action of the trial court in granting plaintiff's motion for a new trial.

The uncontradicted testimony in this case showed the following facts: Appellant is in the ice business. On June 2, 1944, one of its trucks was parked in front of a grocery store. The truck contained ice which was being delivered to customers by Jack Foster, operator of the truck. The grocery store in question was situated on 11th Avenue North near 13th Street in the City of Birmingham. When the truck was parked the driver headed it into the curb

at an angle not exceeding 45 degrees. The driver went into the grocery store to make delivery of ice.

During the driver's absence the minor son of appellee together with another young boy by the name of Richard McCleney went up on a step attached to the back of the truck and leaned over into the truck to get small pieces of ice. The deceased was standing on the left side of this step and Richard was standing to his right.

Appellee's evidence tended to show that while the boys were thus engaged the truck driver Jack Foster appeared in the door of the grocery store and made a face at the boys, stamped his foot and said "scat." These boys were well acquainted with Foster and frequently theretofore climbed on his truck to get ice. Occasionally he would give them ice. When Foster, the driver would see the boys on the truck he would holler "scat" and the boys would "laugh at him and run."

On the occasion of the instant accident, Foster appeared at the door of the grocery store when a trailer-tractor was moving slowly down 13th Street traveling at a speed of not more than five miles an hour, and the path of this trailer-tractor was about four feet from the outer edge of the truck. When Foster stamped his foot and said "scat" Richard McCleney jumped off to his right. The deceased jumped off the truck to his left against or under the trailer-tractor. Behind said ice truck, and at a distance not mentioned in the evidence, a bread truck was parked. So much for the locus in quo.

There was no evidence that deceased ever saw Jack Foster when he appeared at the door of the grocery store, for the uncontradicted evidence shows that at that time he was leaning over inside the truck getting a piece of ice. There was no evidence that deceased heard Foster stamp his foot or say "scat". However, it is uncontroverted that he did jump when Foster said "scat". Whether he jumped for the reason that Richard jumped off the ice truck or because he heard Foster say "scat" is a matter of inference. There was no evidence that the deceased was frightened or had reason to be frightened. Foster's conduct on the occasion was such as was ordinary under the circumstances and well known to plaintiff's intestate. There was no evidence that deceased could not have moved to his right or to his rear or re-

mained stationary with perfect safety. All of the evidence tended to show that deceased was a trespasser on the truck at the time of the accident. The case was submitted to the jury on the theory that if Foster actually discovered the deceased in a position of safety where, if he moved that position, he assumed he would be in a position of peril, it was for the jury to say whether or not the sounds and gestures made by Foster under all the circumstances constituted actionable negligence.

The verdict was for defendant and plaintiff filed motion for a new trial, which the court granted, to set aside the verdict of the jury. The case was restored to the trial docket. Defendant excepted to the court's action in granting the motion for a new trial and this action on the part of the trial court is the basis for the only assignment of error appearing in this record.

Appellant's counsel on oral argument and in brief do not attempt to state the facts shown by defendant's evidence. They say: "In some respects they differed radically from those which the plaintiff's evidence tended to show. However, appellant takes the position that it was entitled to the general affirmative charge under the strongest tendencies of the plaintiff's evidence and further that there was no merit in any ground of the motion for a new trial." Such being the case in respect to the affirmative instruction, other errors are immaterial.

There are several well established propositions of law by this court applicable to this case.

■ A child as well as an adult may be a trespasser. Ford v. Planters' Chemical & Oil Co., 220 Ala. 669, 672, 126 So. 866; Southern R. Co. v. Forrister, 158 Ala. 477, 482, 48 So. 69; Luallen v. Woodstock Iron & Steel Corp., 236 Ala. 621, 184 So. 182.

■ The only duty owed by the owner or proprietor of a truck to a trespasser thereon in ejecting him from the truck is not to injure him wantonly or intentionally. Pollard v. McGreggors, 239 Ala. 467, 195 So. 736; Perry Supply Co. v. Brown, 221 Ala. 290, 128 So. 227; Brookside-Pratt Mining Co. v. Booth, 211 Ala. 268, 100 So. 240, 33 A.L.R. 417.

■ Where the owner or proprietor of a truck discovers a trespasser thereon in a position of imminent peril the failure to exercise due care in ejecting him may be

the equivalent of wilfulness or wantonness. Jewel Tea Co. v. Sklivis, 231 Ala. 590, 165 So. 824; McGhee v. Birmingham News, 206 Ala. 487, 90 So. 492, and authorities cited.

"Peril" as regards the last clear chance doctrine means imminent, impending or certain peril. The term imports more than mere possibility of injury. The well considered general authorities are: Thomasson v. Henwood, 235 Mo.App. 1211, 146 S.W.2d 88; Southern Ry. Co. v. Whaley, 170 Tenn. 668, 98 S.W.2d 1061; Terre Haute & I. R. Co. v. Brunker, 128 Ind. 542, 26 N.E. 178, 179; Hall v. Town of Manson, 90 Iowa 585, 58 N.W. 881; Baldwin v. Wells, Mo.App., 27 S.W.2d 435.

A charge that does not probably injuriously affect the substantial rights of the parties cannot be prejudicial. Navco Hdw. Co. v. Bass, 214 Ala. 553, 557, 108 So. 452; Dudley v. Alabama Utilities Service Co., 225 Ala. 531, 144 So. 5.

Where the general affirmative charge should have been given the defendant, error in giving any other instruction to the jury is error without injury. Tobler v. Pioneer Mining & Mfg. Co., 166 Ala. 482, 515, 52 So. 86; Sloss-Sheffield Steel & Iron Co. v. Peinhardt, 240 Ala. 207, 199 So. 33; Walker v. Stephens, 221 Ala. 18, 127 So. 668; McCauley v. Tennessee Coal, Iron & R. Co., 93 Ala. 356, 9 So. 611; Birmingham Electric Co. v. Cleveland, 216 Ala. 455, 113 So. 403; Mobile, J. & K. C. R. Co. v. Smith, 153 Ala. 127, 45 So. 57, 127 Am.St.Rep. 22.

It is not necessary that we consider charge D if the defendant was entitled to the general affirmative charge which was requested and denied.

Unquestionably the deceased was a trespasser, as regards the truck driver Jack Foster, and the appellant. The fact that deceased was an infant did not prevent him from being a trespasser. In Ford v. Planters' Chemical & Oil Co., 220 Ala. 669, 672, 126 So. 866, 868, it was observed:

"Plaintiff insists that count A does not rest upon this doctrine, but is sufficient independently thereof. But, as pointed out in Cox v. Alabama Water Co. (216 Ala. 35, 112 So. 352, 355, 53 A.L.R. 1336), supra, defendant is not liable, unless it owes a legal duty which it neglected to perform. The conveyor was on defendant's property. That a child, as well as an adult, may be a trespasser is well settled. Southern R. Co. v. Forrister, 158 Ala. 477, 48 So. 69.

"The United States Supreme Court in the Britt Case (United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28), supra, speaking to this question, said: 'Infants have no greater right to go upon other people's land than adults, and the mere fact that they are infants imposes no duty upon landowners to expect them and to prepare for their safety.'

"And in Cox v. Alabama Water Co., supra, is the following language here pertinent: 'To create a legal duty, the person who goes upon the premises of another merely for his own benefit or pleasure must sustain a relation to the owner or his business equivalent to an invitation to come upon the premises.'

"Plaintiff was a trespasser. * * *"

It has long been the law in this state that the owner of property has the legal right to eject trespassers therefrom so long as he uses no more force than is reasonably necessary. In Brookside-Pratt Mining Co. v. Booth, 211 Ala. 268, 100 So. 240, 33 A.L.R. 417, the court said:

"The rule is stated in 2 R.C.L. p. 557, § 36, as follows:

"'The right of a person to protect his property necessarily includes the right to eject persons trespassing thereon. To permit all persons at their will to enter and to remain in the house or the close of another, would practically destroy the dominion of the owner over his property, and would render it almost useless as well as worthless. Such has never been the law, and so long as there is such a thing as individual ownership of property, it is not probable that it ever will be. However, in an action for assault and battery a plea of justification, based on the right of the defendant to eject a trespasser, is good only where it appears that the force used in effecting the ejection was no more than that which was reasonably necessary under the circumstances of the particular case.'"

This court has frequently stated that the only duty owed a trespasser is not wantonly to injure him. In Perry Supply Co. v. Brown, 221 Ala. 290, 128 So. 227, 228, it is said:

"We are in accord with the Ohio court that plaintiff's intestate, as a trespasser, was entitled to the rights of a trespasser,

which were that defendant should not wantonly or willfully injure him. * * *

"In McGhee v. Birmingham News Co., 206 Ala. 487, 90 So. 492, 493, plaintiff was a trespasser upon defendant's motortruck, and in discussing the question of liability the court said: 'It is well settled that the only duty owed to such a person under those circumstances is not to wantonly or intentionally injure him.' * * *"

In the case of Pollard v. McGreggors, 239 Ala. 467, 195 So. 736, 737, it was stated:

"Of course for a recovery in actions of this character, there must first be shown a breach of duty. Cox v. Alabama Water Co., 216 Ala. 35, 112 So. 352, 53 A.L.R. 1336. That a child, as well as an adult, may be a trespasser, is well settled by our cases (Luallen v. Woodstock Iron & Steel Corp., 236 Ala. 621, 184 So. 182); and under the uncontroverted proof, Howard, the unfortunate boy, must be held to have been a trespasser. Upon general principle, therefore, defendant owed him no duty save not to wantonly or intentionally injure him."

This principle was recognized in McGhee v. Birmingham News Co., 206 Ala. 487, 488, 90 So. 492, 493, wherein the evidence tended to show that deceased was on the truck without the driver's knowledge; that the driver became aware of his presence only when the deceased called to him that he wanted to alight; that the driver replied, "all right" turned toward the curb and began to slow down; that intestate placed one foot on the side board of the truck preparatory to getting off; that the truck started up or jerked and the deceased lost his balance and in some manner fell under the truck and was killed. There was no evidence that the driver permitted the deceased to ride on the truck or ever discovered him in a position of peril thereon. In stating the law applicable to such situation, this court observed:

"It is well settled that the only duty owed to such a person under those circumstances is not to wantonly or intentionally injure him, and, if he is known to be in a dangerous position, to exercise due care to avoid injuring him. * * *

"Being a trespasser, the driver was, as to him and his safety, under no restraints in his mode of moving or stopping the truck, unless he knew that the intestate was in a position of peril in relation to the movement contemplated—in this case an increase in the speed of the truck, with some resulting jerk."

The appellant's counsel well observe as to these cases, "that the court limited liability on the part of the driver to a situation where the trespasser was known to be in a position of peril in relation to the movement contemplated. That is, a situation where the driver might reasonably know that injury would 'probably and naturally result.' Negligence under such circumstances would be the equivalent of wantonness; since the driver would act in reckless disregard of the trespasser's imminent peril."

In Jewel Tea Co., Inc., v. Sklivis, 231 Ala. 590, 592, 165 So. 824, 825, the evidence tended to show that the deceased infant was, prior to the accident, riding upon the front fender of defendant's truck with the knowledge and consent of the truck driver, and contrary to the specific orders of the defendant employer against the carrying of passengers. In turning a corner the truck increased its speed and the infant was thrown from the truck and killed. On appeal this court pointed out that, "the evidence on the whole supported a reasonable inference that riding on the front fender with no means of holding on, was a position of peril for a child of such tender years, which, on discovery by the driver, would bring home to a person of ordinary judgment knowledge of peril from the operation of the truck in the usual way, turning corners and the like. After mentioning the fact that many cases have declared generally that the employer is liable only for wanton or wilful injuries inflicted by his employee on a trespasser on a vehicle, while the employee is operating the vehicle in regular course of employment," the court said:

"One question here presented is whether a like rule applies to simple negligence after discovery of peril. * * *

"Liability for negligence after discovery of peril rests on the same broad basis of humanity which renders the employer liable for wanton or willful injury inflicted by his employee while acting within the line and scope of employment. Several of our cases, as well as those of other jurisdictions, have coupled the two together in the statement of the law; not that the measure of damages is the same, but liability for actual damages. We know of no excuse for injuring a person seen in a position of manifest peril, if reasonably it may

be avoided, unless he is also guilty of concurring negligence."

■ "Manifest peril" is such peril as is clearly evident, obvious, plain or palpable. 26 Words and Phrases, Perm.Ed., p. 345. While the court in the Sklivis case did not cite Louisville & N. Ry. Co. v. Johnson, 92 Ala. 204, 9 So. 269, 25 Am.St.Rep. 35, or any other authority in support of the principle announced, the pronouncement was clearly in keeping with what was said in the earlier decision.

■ It is evident that this court has consistently held that before the owner or operator of a truck can be held guilty of actionable negligence either in or about the operation of the truck or in or about ejecting the trespasser, he must have (1) discovered the trespasser in a position of manifest peril on the truck, and (2) with actual knowledge of both his presence and his danger, (3) negligently failed to exercise ordinary care to prevent injury. It was incumbent upon plaintiff to satisfy the jury that Jack Foster actually discovered the deceased trespasser on the truck in a position of imminent or manifest peril and danger and in spite of such knowledge negligently failed to use due care to avoid injury. Until such peril was shown, the driver of the truck owed no duty to the trespasser. An examination of the record discloses that plaintiff's proof fell short of that necessary to create a duty owed by the truck driver to the deceased.

■ Count One-A, on which the case was submitted to the jury, alleged that Jack Foster discovered the deceased on the truck "where he was in a place of safety if he remained stationary and where if he moved his position was one of imminent peril," that Foster "negligently caused plaintiff's said minor son to move into the path of or into contact with said tractor-trailer in this * * * the said Jack Foster * * * provoked and caused plaintiff's said minor son to flee from said place of safety into the path of or in to contact with said tractor-trailer." These were material averments and some evidence tending to prove them were essential to plaintiff's case.

Plaintiff's witness indicated that the truck in question was parked parallel to the curb. By measurement it was fifteen feet from the curb where the ice truck was parked to "where the boy ran into the truck."

The eye witness Richard McCleney said that he was with the deceased on the truck getting ice from defendant's truck parked sidewise in front of Hill's Store. The front of said truck pointed to the curb and the back out "into the middle of the street." The witness saw defendant's driver come out of the store. He showed his false teeth and "stomped his foot and said 'scat' and we both jumped (off the back of the truck)." That he was on the truck then. That he jumped this way (toward the sidewalk) and the deceased jumped that way (out in the street). The witness further testified that there was a step back of the truck and "we could step on it and get ice." They were on this step when defendant's driver came out and did and said what he did. That when he saw the driver and heard him say "scat" he could see the driver's face and that "the truck was right in front of Sonny when Sonny jumped and explained that "Sonny" was the deceased. That when deceased jumped he landed flat and that he jumped into the side of the approaching truck. That he and the deceased had known the driver for sometime and that he had frequently given them ice. That he had theretofore ordered them off of the truck while they were getting ice by sticking out his teeth and saying "scat." Whereupon the boys getting ice would laugh at him and run. That the driver was standing close to the door of the store when he said "scat." That the driver had remained in the store about a minute and when they picked up the big piece of ice he came out, speaking to them as we have indicated.

On further examination of the witness he said the driver showed his teeth first, then stamped his foot and said "scat." In reply to the question, "Now, which way was your little friend, the Alley boy, facing?" the witness replied, "He was facing the same way I was, stooping over getting ice like that and Sonny—when I seen the truck—when he stomped his foot too and said 'Scat', at the same time, he said 'Scat' and stomped his foot and we both jumped. Just like that was the ice truck, we both jumped and he jumped out in the middle of the street. You see he dived, I jumped, and he dived. He just dove off."

Plaintiff's witness East was on the sidewalk near the ice truck at the time of the accident and said that the vehicle was parked at a 45 degree angle into the curb.

That when Foster, the driver, stamped his foot and said. "scat" the deceased jumped and when "he jumped and the truck pulled around—the cab pulled around from the ice thing, and he fell under it, and he went to pick up himself with his hands like that (indicating) and the truck went over him."

In respect to what kind of position deceased was in when he jumped, this witness stated: "He was standing up—he was standing up on the ice truck reaching to get a piece of ice, and he said that, and Jack stomped his foot, and he jumped over under the truck. He slipped and went under the truck, and it went over him." When asked if the boys started falling off the truck, the witness replied: "They were getting them a piece of ice and Jack stuck out his false teeth is what Son told me— Richard—whatever he was. I seen him when he stomped his foot and said scat. Then Richard jumped on the sidewalk, towards the sidewalk, and the other little boy jumped toward the street." When asked, "Just dived off," the witness replied, "Yes, sir. He was jumping off, and slipped. Q. You don't know he slipped? A. He jumped and he slipped."

The position of the two boys on the truck is further described by that witness as follows: "The deceased was on the step of the truck furtherest from the sidewalk and the other boy, Richard, was on the near side when they jumped; that Richard jumped towards the sidewalk and the deceased jumped toward the street."

Plaintiff's witness Turner said of the position of the tractor-trailer unit that it had passed the ice truck; that the little boy whirled and ran from the back of the ice truck "right into the wheels of the tractor trailer." That the two vehicles were about four feet apart. On further examination he said, in response to the question, "Was the child at the back of the ice truck or nearest the front or nearest the back when you first saw him?" * * "I couldn't say. All I seen was the child getting away from the truck when I saw him." The witness further testified as follows: "What was he (the deceased) doing when you first saw him? A. He made a whirl right opposite from the truck, and ran and landed in front of it." That he would estimate the truck which ran over the boy was at least four feet from the ice truck and deceased "ran that far to get to it."

The foregoing testimony illustrates the strongest tendencies of plaintiff's case, and the weight of the testimony is further illustrated by evidence showing that the tractor-trailer was at the time traveling very slowly as it passed the ice truck and injured the boy. When the whole evidence is considered in the light of the strongest tendencies of plaintiff's case, it was short of showing deceased in a position of safety where if he moved he was in a position of imminent peril and that Foster the driver of the ice truck caused him to flee into peril and his injury with knowledge of his imminent peril.

The case of Baker-Evans Ice Cream Co. v. Tedesco, 114 Ohio St. 170, 150 N.E. 745, 747, 44 A.L.R. 430, cited by appellant, is similar to the case at bar. In that case the defendant's truck was delivering ice cream to customers and had stopped at the curb of a public street. Particles of ice fell from the rear of the truck to the pavement. Plaintiff, a child of some five years, walked over to the truck to pick up particles of ice which had fallen therefrom. The truck driver suddenly reappeared from the cellar of a customer and shouted "Hey There." At that time the driver was walking toward the rear of a truck where plaintiff was engaged in picking up the ice. When the driver called out the plaintiff, "immediately, alertly and swiftly" started across the street being induced by fear of the defendant's agent, from his words and conduct, and by the fear caused by the agent and servant at other times." The complaint averred that the truck driver would frequently use harsh and threatening language toward children to make them get away from the truck; that the language and conduct of the driver was calculated to put the children in fear. It was then alleged that the plaintiff in leaving the truck was struck by an automobile and was injured. It was alleged that the truck driver was negligent in failing to warn the children, including plaintiff, of the dangers of traffic. The court in its opinion observed:

"* * * The averments of the petition indicate that because of the language and action of the defendant's agent on previous occasions the plaintiff and other children feared him when they saw him coming, and would run away upon his approach, without a warning by calling to them, or otherwise. From these averments it seems doubtful if the 'Hey, there,' on

this occasion, added anything to causing the plaintiff to run away. However that may be, it was clearly the duty of defendant's agent to warn the children away from the truck before he started. He did that, and thus averted any injury that might have been caused by moving the truck while the children were in the vicinity. It is pertinently asked what further is required under such circumstances, and it is well suggested that if one is liable for failure to warn, and is also liable if he does give an effective warning and thus cause the children to absent themselves from a dangerous place and prevent injury to them, it is quite difficult for some person to determine what can be done to avoid liability. If there be a liability under the state of facts here presented, there would be a liability had the driver been in his seat and by use of his auto horn given warning to the children in the street in an endeavor to avert injurying them, if a child getting out of the street were injured by a passing automobile or otherwise. Surely no one could claim that the giving of such warning under those circumstances would constitute actionable negligence. The doctrine of attractive nuisance can have no application under the facts and circumstances here presented."

Other cases cited by appellant are not in point since the vehicles from which the injured children were forced to jump were moving.

It results from the foregoing that the boy was a trespasser and no facts are shown to have been known to the driver which would impute liability to the owner of the vehicle and the affirmative charge should have been given at defendant's request. It is, therefore, not necessary to consider other insistences based upon the record.

The judgment of the circuit court was in error and is reversed.

Reversed and rendered.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.

On Rehearing.

PER CURIAM.
Application for rehearing overruled.

GARDNER, C. J., and FOSTER, LAWSON, and STAKELY, JJ., concur.